WYLLYS LYMAN, GEORGE P. MARSH, JOHN PECK, AND JOHN H. PECK, PLAINTIFFS IN ERROR, *v.* THE PRESIDENT, DIRECTORS, AND COMPANY OF THE BANK OF THE UNITED STATES.

Where persons were indebted to a bank and gave their promissory notes for the amount of the debt, the mere acceptance of the notes by the bank did not necessarily operate as a satisfaction; and whether or not there was an agreement at the time to receive them in satisfaction, or whether the circumstances attending the transaction warranted such an inference, were questions for the jury.

All the notes having been paid except the last, and the action not being brought upon the note but upon the original consideration, the bank was not bound to bring the prior notes into court: the presumption of law was, they had been given up by the holder at the time of payment. If the fact was not so, the burden lay upon the defendants to show it.

So also, a part of the consideration being the purchase of real estate, the bank was not bound to prove the execution and delivery of proper conveyances to the defendants. Having given their notes for the purchase-money, the court was bound to presume that they were satisfied with the conveyances. If not, it was their duty to show it.

Where the bank had become insolvent and had made an assignment of its effects to trustees for the benefit of its creditors, the bank was allowed to sue in its own name at the instance, and for the benefit of creditors, and the case was the same as if the law permitted the suit to be brought, and the same had been brought, in the name of such trustees.

Although the bank had indorsed a note amongst its other assets to its trustees, yet under the circumstances it could maintain a suit upon the note, because,

Where a party who is the holder of a note has transferred it for purposes of collection, and it is not paid but is found in the possession of the original holder, he can recover, as he is remitted to his original rights, notwithstanding the indorsement; and if the note is not paid, the plaintiff may give it up and recover upon the original consideration.

Before the defendants became indebted to the bank, the bank had made a compromise of certain claims, which, amongst others, were the subject of the sale by the bank and purchase by the defendants. Two of the defendants had knowledge of the conditions of this compromise, and their knowledge must be considered as extending to the other defendants. It was a question for the jury to determine what the defendants purchased.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the District of Vermont.

It was a suit brought by the Bank of the United States, under the following circumstances :

During the existence of the charter granted by Congress to the Bank of the United States, it had established a branch of that institution at Burlington, in the State of Vermont. The Bank, when chartered by Pennsylvania, became the owner of the property and effects of the former corporation, and of course of the property and effects of the branch at Burlington. Being about to close and withdraw that branch, the board in Philadelphia received the following offer :

To the President and Directors of the Bank of the United States.

John Peck and Lyman and Marsh and others, propose to purchase of the Bank of the United States the property of the office at Burlington, Vt., as it was upon the 2d day of March, 1836, upon the following terms, viz. :

| | | |
|---|---:|---:|
| Bills discounted, 2d March, 1836, | $70,121 01 | |
| Bills receivable, same date. | 2,133 46 | |
| | | $72,254.47 |
| With average of interest. | | |
| McIntire & Burdick's debt, | $24,128.12 | |
| McIntire & Blood's debt, | 2,000.00 | |
| Blood & Burdick's debt, | 1.600.00 | |
| McIntire & Bean & Rolfe's debt, | 3,000.00 | |
| Gates & Co.'s debts, | 23,795.28 | |
| | | 54,523.40 |
| Suspended debt, | | 5,000.00 |
| Banking-house and appurtenances, and house and lot in Vergennes. | | 10,000.00 |
| | | $141,777.87 |

(McIntire & Burdick's debt through Gates & Co.'s debts marked "At the face.")

To be paid in four or five annual instalments, with 5 per cent. interest, and such security given as shall be satisfactory.

JOHN PECK, <em>for himself and others.</em>

Philadelphia, 10th March, 1836.

The offer was accepted, and the plaintiffs in error signed four joint and several notes, dated on the 1st of April, 1836, payable to the order of Mr. Jaudon, cashier, at the Union Bank, in the city of New York. Each note was for $35,500 dollars, and they were payable one, two, three, and four years after date. Separate notes were given for the interest payable at intervals of six months, and the small balance remaining being paid in cash.

When the first note was becoming due, Peck & Co. were not prepared to pay it, and requested the bank to discount other paper for them to the amount of $15,000 to place them in funds ;

and amongst this other paper was a note by Lyman & Cole for $5000, which was indorsed over to the bank by Peck & Co. The bank having acceded to this proposition, the first note was given up as paid, as was also the second and third when they became due. The note by Lyman & Cole, however, was not paid; and constituted one of the items of this suit.

By reference to the above list of assets, it will be perceived that the "suspended debt" is valued at $5000. Two of these items were brought forward in the bill of exceptions, and are noticed in the opinion of the court. It is proper, therefore, to give the following explanation of the matter, copied from the brief of Mr. Phelps:

Among the items of the suspended debt sold to the defendants for the sum of $5000, the nominal amount being over $26,000, were two sums standing upon the books of the bank in the list of suspended debts, as due from one Burrows, and from the firm of Truesdell & Co. The debt of Truesdell & Co. had been compromised by the payment of fifty per cent., so that the balance of 50 per cent., which stood upon the books of the bank at the time of the sale to the defendants, was not due. The amount paid by Truesdell & Co. had been deducted from the original debt, so that the sum apparently due was only the remaining half.

The Burrows debt had also been compromised, and was in a similar condition, except that the sum to be paid by him under the compromise had not been paid.

The compromise of the debts against Truesdell & Co. was made by the directors of the branch, with the approbation and concurrence of the parent board. At the time when this was done two of the defendants were directors of the branch, and acted in the matter.

The directors of the branch were directed by the parent board to make semi-annual returns, showing the condition of the branch, the suspended debts, &c. Two of these returns, signed by two of the defendants as directors, show the precise condition of these debts. They being marked with the letter D, signifying desperate, and a note being appended, showing that the apparent balances were not due. These transactions took place long before the sale to the defendants. The defendants claim that they should be indemnified for the amount of these apparent debts not really due.

In October, 1849, the bank brought suit against Peck & Co., in the Circuit Court of the United States for the District of Vermont. The declaration contained the usual money counts, an account stated, and also counts for the original consideration of the notes. The defendants pleaded the general issue and statute

of limitations. At the trial the jury found a verdict for the plaintiff at $21,621.47, and costs.

In the course of the trial several exceptions were taken to the admissibility of evidence, and upwards of one hundred pages of printed matter were incorporated into, and made part of, the bill. It is obvious, therefore, that the whole of it cannot be inserted.

To sustain the issue, on the part of the plaintiffs, the counsel for the plaintiffs offered in evidence the testimony of Lloyd Mifflin, John Ramsey, Samuel Jaudon, and Thomas B. Taylor, with the several papers and exhibits thereto attached, and referred to in their testimony, which testimony was taken under a commission issued from this court, and which testimony, papers, and exhibits, are on file in said suit, and are hereby referred to, and incorporated with, and made part of, this bill of exceptions, together with the promissory note, dated April 1, 1836, for thirty-five thousand five hundred dollars, payable to " Samuel Jaudon, Esq., cashier," or order, four years from date, at the Union Bank, in the city of New York, signed by the defendants; and the note for five thousand dollars, dated March 25, 1837, signed by Lyman & Cole, payable to defendants, or order, on the first day of June, 1837, at the Union Bank, city of New York, which pormissory notes are also annexed to said testimony on file, as aforesaid, and are referred to, and made part of, this bill of exceptions.

To the reading of which testimony, exhibits, and notes, the counsel for the defendants made the following objections:

1. To the reading of the said thirty-five thousand five hundred dollar note, upon the ground that it was not payable to the plaintiffs but to Samuel Jaudon, and not indorsed by said Jaudon.

2. Objected to the " explanatory memorandum" upon exhibit B, referred to in, and annexed to, the deposition aforesaid of said Mifflin, on the ground that the defendants were not, nor either of them, parties to, nor in any way connected therewith.

3. To the testimony of said Mifflin, under the fifth interrogatory, tending to prove that the consideration of said thirty-five thousand five hundred dollar note moved from the plaintiffs, and the practice of the plaintiffs, in taking notes payable to the cashier; and to the testimony of said Jaudon, under the 7th, 8th, and 9th interrogatories, tending to prove that the plaintiffs advanced the consideration of the said thirty-five thousand five hundred dollar note, shown to said witness Jaudon, and the other notes referred to by him, given by the defendants at the same time, and that it was the property of the plaintiffs, and tending to prove the practice of the plaintiffs in taking notes thus payable; and also to all the evidence tending to prove the same facts, on the ground that the legal effect of the note could not be varied or controlled by parol evidence.

4. To the testimony of said Mifflin, under the 7th interrogatory, on the ground that neither parol evidence nor a copy of the instructions was the best evidence, and that the original should be produced; and objected to the evidence of said Mifflin, under the 8th interrogatory, on the ground that the original paper, sent to the Branch Bank at Burlington, should be produced.

5. The defendants objected to the testimony of said Mifflin, under the 10th interrogatory, tending to prove the signature of Wyllys Lyman to paper or exhibit marked E, on the ground that neither the acts of Lyman, done by him in his official capacity as director of the Branch Bank at Burlington, nor any knowledge derived by him in the performance of his duties as such director, could affect the other defendants, or in any way affect the rights of the defendants in this action; and also claimed that, if admissible, it would be evidence only against Lyman. But the court overruled the objections, and admitted the evidence generally, so as to affect all the defendants.

6. The defendants objected to the evidence of said Ramsey, under the 6th interrogatory on the direct examination, relating to the ability of Silas E. Burrows, on the ground that the solvency or insolvency of said Burrows was immaterial, and also on the ground that the testimony of the witness, as given in his answer, is not legal evidence, tending to prove the inability or insolvency of said Burrows; the witness (as defendants insisted) stating no facts, but inferences merely.

7. The defendants objected to the testimony of Samuel Jaudon, under the third interrogatory, on the ground that the doings of the corporation, (parties to the sale,) could not be proved of parol.

8. The defendants objected to the evidence of said Samuel Jaudon, under the 10th, 11th, 12th, and 13th interrogatories, on the ground that the same is irrelevant and immaterial, and on the ground that the power to negotiate the note or transfer the legal interest therein, is matter of law, and not a subject-matter of proof.

9. The defendants objected to the testimony of said Jaudon, under the 17th interrogatory on the direct examination, on the ground that the contract was in writing, and that parol evidence was not admissible. The court overruled all the objections, and the evidence was read to the jury.

All the depositions and schedules, exhibits and papers, thereto annexed, above mentioned, were read in evidence to the jury. The plaintiffs also introduced as a witness, Morton Cole, one of the signers of the five thousand dollar note aforesaid, whose testimony proved that said note last aforesaid was executed by himself and Lyman, the other maker, as an accommodation note, that is, without consideration, and for the accommodation of the payees in said note.

The plaintiffs also introduced a copy of the charter of the Bank of the United States, by the State of Pennsylvania, which is referred to as part of the case; and also introduced a letter from John Peck, dated May 30, 1844, which is also referred to as part of the case.

The defendants introduced the paper hereto annexed, and made part of the case, (marked X,) together with the testimony of Charles F. Warner, whose testimony proved that said paper was in the handwriting of Thomas Hockley, who is mentioned in the depositions introduced by the plaintiffs, and that said Hockley died in November, 1836, and continued to act as the agent for the plaintiffs, in the matters relative to the Branch Bank at Burlington aforesaid, up to the time of his death; and the defendants claimed that this paper was furnished to them, (at the time of the sale by plaintiffs to defendants,) by said Hockley, as agent of the plaintiffs, as a list of the debts embraced in said sale, and that they bought, relying on that and the paper (marked O) annexed to the deposition of John Ramsey, and referred to in his answer to the third and fourth and fifth interrogatories by defendants, as furnished to defendants by said Ramsey, on behalf of plaintiffs, at the time of said sale, and on the faith of which they made the purchase, as defendants claimed.

The plaintiffs also introduced evidence, tending to prove that this suit was prosecuted by the consent and by direction of Robertson and others, trustees.

No other evidence was introduced on either side.

The plaintiffs claimed to recover the amount of the balance of the account annexed to the deposition of Thomas B. Taylor, (marked W,) and interest thereon, from the first of January, 1846, to the time of trial; that is $17,638.87, and interest thereon from January 1, 1846, to the time of trial.

The defendants' counsel insisted, and asked the court to instruct the jury,—

1. That upon this evidence the plaintiffs were not entitled to recover.

2. That the $35,500 notes, given for the original purchase, were payable to Samuel Jaudon and not to the plaintiffs, and that as the notes were not indorsed by Jaudon, there could be no recovery in this action, in respect of the notes upon any of the counts in the declaration; and that there was no evidence in the case tending to prove an account stated between plaintiffs and defendants.

3. That the notes given by defendants to Samuel Jaudon, as aforesaid, are *primâ facie* given in payment of the original purchase, and that, therefore, this action cannot be sustained in the

name of the plaintiffs, either upon the notes, or the consideration as evidenced by the notes, or upon the original contract of sale.

4. That if the notes were not to be treated as payment as matter of law, yet as the proof shows that the notes were given in payment, that the plaintiffs could not recover; and if the court would not so instruct the jury, then to instruct them that if they should find that the notes were given and received in payment, then the plaintiffs could not recover.

5. That if the notes were not given in payment, yet, as it appears from the evidence that they were assigned to Robertson and others, before the commencement of the action, and are still the property of said Robertson and others, that the notes thereby operate as payment or an extinguishment or suspension of the original cause of action, and that such would be the effect if the jury so found the facts, and that in that event the plaintiffs could not recover.

6. That the plaintiffs cannot recover on the original contract or consideration, without bringing into court all the notes, or showing that such as are not brought into court have been given up to defendants, more especially as it appears that the notes were given payable to a third person, and have been assigned.

7. That there can be no recovery for the real estate without showing a conveyance to defendants by deed, or some conveyance of the real estate, and that as the plaintiffs had alleged a conveyance, the proof without evidence of such conveyance did not support the declaration, and that the payments made must be applied to the items of plaintiff's account, legally proved, and not to the items for real estate, unless found by the jury to have been specially made upon the items for real estate.

8. That the plaintiffs cannot recover upon the $5,000 note while it appears to have passed by assignment by plaintiffs to Robertson and others, indorsed in blank by defendants and Robertson and others, still the owners, and also for the reason that it appears to be indorsed to M. Robertson, and the legal title still in him and out of the plaintiffs.

9. The defendants' counsel also insisted and claimed, that if the plaintiff was entitled to recover, that the amount of the three securities or debts against J. Truesdell & Son, amounting to $4,884.48, and two securities or debts against Silas E. Burrows and J. Truesdell & Son, amounting to $2,536.86, contained in schedule as exhibit (O) referred to in the testimony of John Ramsey, should be deducted from the plaintiffs' claim, which securities or debts the plaintiffs claimed were purchased by defendants as subsisting and valid debts, and that they had been compromised and discharged by the plaintiffs; and asked the court to instruct the jury that if they should

so find the facts, to deduct the amount of such debts, or such or so much of them as they should find were so purchased by defendants, and compromised and discharged by plaintiffs, from the amount of the plaintiffs' claim; and if the court did not so instruct them, then to instruct them to deduct so much as they should estimate the debts to have been worth at the time of such purchase, which were discharged by the plaintiffs; and that at all events the defendants were entitled to have deducted the amount or value of the note taken by plaintiffs in the compromise of the Burrows debt.

10. The defendants further insisted and asked the court to instruct the jury, that it was a question of fact for them to find whether the defendants, or either of them, had knowledge of the condition of these debts, or whether, at the time of the purchase, said debts, or either of them, had been compromised and discharged; and that if they should find that Wyllys Lyman and John Peck, or either of them, had knowledge of the condition of said debts, and that they had been compromised and discharged, or either of them, at the time of the purchase, and that they derived such knowledge by and while acting in their official capacity as directors, or as committee of said Branch Bank at Burlington, that such knowledge would not affect the other defendants, or defeat or affect the right of the defendants to have a deduction from the plaintiffs' claim on account of said debts as aforesaid.

The court refused to instruct the jury agreeably to the defendants' first request, to which the defendants tendered their exceptions, which are allowed and sealed by the court.

Upon the points raised in the second request by the defendants, the court charged the jury that the action was not brought, nor did the plaintiffs seek to recover upon the $35,500 notes, and that there could be no recovery upon said notes, as the same were payable to Samuel Jaudon, and had not been indorsed by him, and that the evidence did not tend to prove an account stated with the plaintiffs, but with Robertson and others, trustees, to whom the debt had been assigned, and who were the owners thereof at the time.

In answer to the third request of the defendants, the court refused to charge as requested, and charged the jury that the notes given at the time of the purchase were not *primâ facie* payment; that as the notes were given to Samuel Jaudon as agent of the plaintiffs, they were in judgment of law the property of the bank, and for this purpose the same as if given payable to the plaintiffs. That the note in one sense may be considered as *primâ facie* payment, until it reaches maturity. It suspends the remedy till then. To which refusal of the court to charge as requested the defendants tendered their bill of exceptions, which is allowed, and signed and sealed by the court.

In answer to the fourth request the court refused to charge as requested by defendants, and charged the jury, that it was a question of fact for them to find, whether the notes were given and received in payment and satisfaction of the debt or original consideration, and that if so the plaintiffs could not recover. That in order to operate as a satisfaction, they must have been given and received as actual payment; that if goods are sold and bills receipted by the vendor "received payment by note," that is no payment; that means payment when the note is paid, and is not payment or satisfaction until such note is paid.   That the rule is, that the giving of a note is no satisfaction of the original debt or consideration, unless there is an agreement that the note shall be in payment, and. that the question in this case is, whether at the time of the purchase the parties superadded an agreement that the notes should be in satisfaction; if not, then they would not operate as a satisfaction.   To which refusal of the court to charge the jury as requested, and to the charge as given, the defendants tender their bill of exceptions, which is allowed, and signed and sealed by the court.

The court refused to charge the jury as requested in the defendant's fifth request, and charged the jury that Robertson and others were assignees and trustees for the benefit of creditors, and held the debt for the benefit of creditors of the bank, and that the suit was instituted by the plaintiffs, (the bank,) at the instance and for the benefit of creditors, and the case is the same as if the law permitted the suit to be brought, and the same had been brought, in the name of such trustees.   To which refusal of the court to charge the jury as requested, and to the charge as given to the jury, the defendants tender their bill of exceptions, and the same is allowed, and signed and sealed by the court.

The court refused to charge the jury as requested in the defendants' sixth request, and did instruct the jury, that although the two intermediate notes given at the time of the purchase were not accounted for, yet as the plaintiff conceded that they had been paid by the defendants, the legal presumption was that they had been given up to the defendants; that the law obliges a party to give up a note when paid, and that the burden lay on the defendants to show that the notes were outstanding and indorsed before due under such circumstances; that the holders were bonâ fide holders before the defendants could claim that the notes are outstanding, or object that the notes are not brought into court.   To this refusal of the court to instruct the jury as requested, and to this instruction of the court, the defendants tender their bill of exceptions, and the same is allowed, and signed and sealed by the court.

The court refused to charge the jury agreeably to the seventh request, and charged the jury that it was objected by the defendants that the plaintiffs could not recover the items for real estate without showing a conveyance of the real estate; that this objection would be well founded if the contract was executory, but that this contract was executed, and, therefore, the plaintiffs might recover without showing a conveyance of the real estate; and that, without showing such conveyance, the proof supported the declaration in this respect. To the refusal of the court to instruct the jury as requested, and to the instructions as given, the defendants tender their bill of exceptions; which is allowed, and signed and sealed by the court.

The court refused to charge the jury agreeably to the eighth request, and charged the jury that, where a party who is the holder of a note has transferred it for purposes of collection, and it is not paid, but is found in the possession of the original holder, he can recover, as he is remitted to his original rights, notwithstanding the indorsement, whether stricken out or not; and that another answer to defendants' objection was that if not paid the plaintiffs may give it up, and recover upon the original consideration. To this refusal of the court to instruct the jury as requested, and to the instructions as given, the defendants tender their bill of exceptions, and the same is allowed, and signed and sealed by the court.

The court refused to instruct the jury agreeably to the ninth and tenth request of the defendants, and instructed them that it was a question whether the plaintiffs sold the debt of Truesdell & Son, as it stood upon the books, and the same as to the debt of Silas E. Burrows, or whether defendants bought these debts with a full knowledge of the circumstances of these debts; that it appeared that, in pursuance of instructions of the parent bank to the branch bank, that it was the duty of the branch bank to make semiannual returns, showing what debts were good, and what bad, and what were considered desperate; that in June, 1835, and in November, 1835, returns were made, and in that of June, 1835, there is a memorandum opposite the Truesdell debt: " This balance due after compromise ;" and opposite the Burrows debt is put down "compromised at the New York office," and a similar entry in the return of November, that it is claimed by defendants that, as those debts are put in at the original amount in the list, it is a representation that the debts are due; but that the answer to this is, that Lyman and Peck were directors at the Burlington branch, and are to be presumed to have been cognizant of the condition of these debts; and further instructed the jury, that, as it appeared that Lyman and Peck knew the fact of the compromise and condition of these debts at the time

of the purchase, although the defendants' objections would be well founded if notice to Lyman and Peck was not notice to the other defendants, yet notice to Lyman and Peck was in law notice to all the defendants, and their knowledge was to be in law imputed to the other defendants; and inasmuch as the purchasers knew at the time of the purchase that these debts had been compromised, the bank was not bound to make any deduction on account of these debts, and that if the plaintiffs recovered, they were entitled to recover the amount of the balance of $17,638.87, as by the account annexed to the deposition of Thomas B. Taylor, marked (W,) and interest thereon, from January 1, 1846, to time of trial. To which refusal of the court to charge agreeably to the ninth and tenth requests, and to the charge of the court as given, the defendants tender their bill of exceptions, which exceptions are allowed, and signed and sealed by the court. The jury returned a verdict for the plaintiffs, for amount of said account last mentioned and interest, amounting to $21,621.47. To all which several decisions of the court, and refusal to instruct the jury as requested, and to the instructions of the court as given to the jury, the defendants tendered exceptions and prayed that the same be allowed, and which were severally allowed, and signed and sealed by the court.

S. NELSON, [SEAL.]
ASAHEL PECK,
*Attorney and Counsel for defendants.*

Upon these exceptions the cause came up to this court.

It was argued by *Mr. Phelps*, for the defendants in error, no counsel appearing for the plaintiffs in error.

*Mr. Phelps.* This action is brought by the assignees of the bank under the assignment of September 4, 1841, in the name of the bank, and contains several counts, viz., a count upon an account stated, which was not relied on at the trial; a count for money had and received, and several counts in *indebitatus assumpsit* for the various descriptions of the property sold, including one for real estate "sold and conveyed."

Various points are raised by the bill of exceptions, which relate, 1st, to the admission of the evidence; and, 2dly, to the charge to the jury; and these will be examined in their order.

1. The note for $35,500 is objected to upon the ground that it is payable to Jaudon, and is not by him indorsed.

It is sufficient to say here, that the note was not offered as the foundation of the suit, or as of itself sustaining it. It was offered as a part of the transaction testified to by the witnesses, and for the purpose of showing a consummation of the contract,

the price to be paid, and, in connection with the account current, the balance due the plaintiffs. The effect of taking the note in this form upon the plaintiffs' remedy will be considered hereafter.

2. The explanatory memorandum on exhibit B, attached to the testimony of Mifflin, is objected to.

Exhibit B is the original proposition of the defendants for the purchase. If exhibit A is referred to, which was an estimate of the value of the property made by the witness to enable the board to judge of the proposition, it is a document in all respects immaterial, having no possible bearing upon the issue. The memorandum is of the same character. It was introduced by the witness of his own motion. It will not do to hold that the introduction of circumstances, wholly immaterial, by a witness in detailing a transaction, is error, and a ground of reversal.

Had this been objected to specifically, it would probably have been waived by the plaintiffs; but it is here urged in support of a general objection to the whole testimony.

3. The third ground of objection has reference to the proof as to the origin of the note, from whom the consideration moved, what it was, and as to the fact that Jaudon is, in regard to the note, a mere trustee for the bank. This objection is founded upon the mistaken supposition that the action is brought upon the note to enforce it; whereas the plaintiffs waive their remedy on the notes, and seek to recover upon the original contract of sale.

Whether the taking the notes in the name of Jaudon bars this action is another question.

There is nothing in the nature of a promissory note which precludes an inquiry into the facts, as to what the consideration was, from whom it moved, or whether the payee holds it as trustee, whenever the inquiry is pertinent to the issue; whether the contract expressed on its face can be varied by parol, is a very different question.

But if this objection is well founded, the whole defence in the case falls to the ground. If we are not at liberty to connect the note in this way with the transaction between these parties, then it is to be regarded as a matter between other parties having no connection with this controversy, and no bearing upon the case. In this point of view the whole testimony in regard to the notes becomes immaterial, and affords no reason for reversing the judgment, unless an improper effect was given to it in the charge to the jury. The judge, however, directed the jury, in substance, to disregard the notes, unless they found that they were in fact received in payment.

4. To the testimony of Mifflin, in answer to the 7th interrogatory. This testimony relates to the general practice of the

bank, and the instructions generally given to the branches. This was clearly competent evidence. And, in describing that practice, it was certainly proper for the witness to refer to a printed copy of the instructions themselves; for, in this point of view, one copy is as much an original as another. The general practice of the bank might not be material, standing alone; but that is not the objection.

The answer to the eighth interrogatory merely states the fact, that a copy of the circular was sent to the branch, which certainly does not fall within the rule excluding parol evidence.

When this fact appeared, all further inquiry of the witness, as to the contents of that particular paper, is of course precluded, unless the paper is produced or accounted for. Here was no attempt to control a writing by parol.

The paper produced speaks for itself; and the fact that one of the printed circulars was forwarded to the branch in Vermont does not conflict with the paper itself, nor is it descriptive of its contents.

Besides, this paper was attached to a deposition taken under a commission, the defendants being present at the taking, and filed in court long before trial. This was of itself sufficient notice to the defendants to produce what they call the original.

Some of them having been directors during the whole existence of the branch, they must be supposed to have the custody and control of it. This view of the subject imposes no hardship upon the defendants. They may produce the paper, if necessary, in their defence, and it involves no surprise, as they have notice by the return of the commission that the plaintiffs will use the copy if they do not.

5. The fifth objection involves two questions: 1st, whether notice to Lyman, as director, is evidence of knowledge in him in his private capacity; and, 2dly, whether notice to him is legally notice to all the defendants.

The first point is disposed of by a simple statement of the case. Lyman was appointed director of the branch by the parent board He stood, therefore, in no official relation to that board, but was simply their agent. In that capacity he compromised the debts with Truesdell & Co., and reports his doings to his principal. He afterwards purchases the suspended debt. The question then becomes this, — whether an agent who reports his proceedings to his principal is supposed to know what he has done or what he reports? And if he deals with his principal afterwards, both parties relying upon what the agent communicates, and it prove untrue, the principal or the agent is defrauded.

As to the other point, it is very clear that notice to one is

notice to all. They are joint contractors, and notice must necessarily affect all or none. I know of no exception to this rule, unless it be in the case of joint indorsers of a note or bill, which depends upon peculiar principles not applicable to this case.

In regard to the Burrows debt, the evidence is, that he signed a report, dated in November, 1835, in which that debt is reported as " compromised at the New York office," and marked as desperate.

6. To the answer of Ramsay to the 6th interrogatory. The solvency of Burrows was material. His debt was purchased by defendants (if purchased at all) as a doubtful debt; but $5,000 having been given for the whole list of suspended debts, amounting to over $26,000. If defendants have any claim upon the plaintiffs, by reason of the debt not being due, it is only for what they have lost.

The proof of the fact is also proper. The court cannot go into a settlement of a man's estate to ascertain his solvency. It is a matter of reputation and opinion, and the opinion of the witness, with the grounds of it, was competent proof.

The fourth, fifth, and sixth objections have reference to the claim of the defendants upon the plaintiffs, on account of the Burrows and Truesdell debts. But the whole of the evidence on that subject was unimportant. The matter was not properly in issue. There is no plea of set-off in the case, and the failure of consideration being partial merely, could not be set up as a defence. The matter got into the case by the plaintiffs anticipating the claim, and taking evidence under the commission to rebut it.

7. The seventh objection to the testimony of Jaudon, in his answer to the 3d interrogatory, is founded on the exploded notion, that a corporation cannot contract except under seal. It is now well settled that a corporation may contract through its agents by parol.

At all events, the defendants purchased of the new bank, after the old charter had expired, and have had the full benefit of their purchase; it is not now competent for them to question the plaintiffs' title.

8. The eighth objection, viz., the testimony of Jaudon, is altogether misconceived. The witness does not testify to matters of law, but to the authority which the bank conferred, as a matter of fact, upon its agents.

9. The ninth objection to the answer of the same witness to the 17th interrogatory is equally unfounded. This testimony is unimportant, inasmuch as the defendants offered no proof of an express warranty. But it was technically admissible, for the

transfer of the property was not in writing.    The defendants' proposition was in writing, and they were advised by letter that the proposition was accepted; but no written transfer of the property was executed.    There might, therefore, have been a verbal warranty, and to meet such a suggestion the proof was taken.

II. As to the exceptions to the judge's charge:

1. The first is general, and depends upon the other points in the case; it need not therefore be discussed.

2. The second request of the defendants' counsel was most fully conformed to by the judge, who told the jury explicitly, that the plaintiffs could not recover upon the notes, nor upon the account stated.

3. The charge of the court upon the third point suggested by the counsel was doubtless correct.    Had the notes been made payable to the plaintiffs, they might have waived their remedy upon the notes, and sued on the original contract.    A note is a mere security for a debt.    It is upon this principle that a note may be given in evidence under a count for money had and received.

The real question in the case is not, as the counsel seem to suppose, whether a recovery can be had upon the notes in the name of the bank, as parties to the notes; but whether the taking the notes in the name of Jaudon will, under all circumstances, bar the action on the original contract?

Had the notes been made payable to the bank, they clearly would not have that effect.

Does the fact that they were payable to Jaudon make any difference?    They were made payable to him, as an officer of the bank, in trust for the bank, he having personally no interest in them; they have never been put in circulation, but have ever remained, and still are, in possession of the bank, except so far as they have been paid and delivered up to the defendants.

Can any reason be given why the bank should not have the same remedy in this case as if they were payable to the bank directly?

4. If the notes are not payment of the original debt by operation of law, the only remaining question is, whether they were intended by the parties to have that effect?

This question was very fairly left to the jury, with the instruction that, as the legal effect of the notes was not to extinguish the original cause of action, they could not have that effect, unless by agreement of the parties.

5. The fifth request of the counsel assumes, that the assignment to Robinson and others, trustees, divested the bank of all interest in the claims; and, therefore, that they cannot recover.

But the assignment was made of the effects of the bank for the purpose of closing its business, and for the benefit of its creditors. The claim, therefore, passed to the assignees precisely as the bank held it; and they had the same election in regard to the remedy as the bank had. Had the notes been put in circulation upon a new consideration, moving from a third party, the two remedies would have been separated, the election made, and the right of election determined; but passing, as they did, together, the character and condition of the claim in either form, was not changed by the assignment.

6. The sixth request assumes, very properly, that it is incumbent on the plaintiffs, either to bring the notes into court or otherwise account for them. But the account current attached to the deposition of Taylor, shows that the three notes first payable were paid, and how they were paid. The plaintiffs admitted the payment on trial. The legal presumption, then, is, that they were given up to the defendants; especially as ten years had elapsed at the time of trial after the last of the three notes became payable, and the statute of limitation had run upon it more than four years before.

The testimony of Ramsey shows that the note first due was given up to the defendants, and this fortifies the presumption that the others were.

7. The seventh request relates to the count for the sale of the real estate.

The objection is, that the proof does not support the declaration.

Nothing can be made, on this point, of the suggestion of a variance; for the proof, if it show any thing, shows an execution of the contract, as stated in the declaration; and as the defendants executed their notes agreeably to their proposition, it is to be presumed, in the absence of all proof, that they received such a conveyance as was satisfactory.

If there be any foundation for this exception, it must be on the ground that the deed of conveyance, or a copy of it, should be produced as the best evidence. If the title to the real estate were in controversy, the conveyance should undoubtedly be produced, that the court might judge whether it were effectual. But the allegation in this case is, that the defendants "being indebted for certain real estate," &c., "promised," &c. The material fact is the indebtedness. If that indebtedness is admitted, it is enough. The defendants, by giving the notes for that consideration, agreeably to their first proposition, admit the indebtedness. Why, then, should the deed be produced? It would not prove the indebtedness if it were. That would depend, after all, upon other proof. Nor is it necessary to show

that the deed conveyed a perfect title. The defendants may have stipulated for a release merely, and may have acquired no title, and yet may be liable on their promise.

The title is not in issue in any form. There is no pretence that the defendants have given a defective title for which they are responsible, or that the consideration of the notes has failed, either in whole or in part, or that the plaintiffs failed to execute the contract fully.

Inasmuch, then, as the deed would not prove an indebtedness if produced, (it not being a security executed for such a purpose, and indeed would contain an acknowledgment of payment of the consideration-money,) and as the title is in no way in issue, for what rational purpose should it be produced?

It would simply show the fact that a conveyance of some kind was executed; a fact necessarily admitted by the execution of the notes.

After all, the point is immaterial. A judgment will not be reversed for an erroneous decision, if it appear that the result of the case must be the same, whether the point be ruled one way or the other.

The court very properly adopted the amount agreed to be paid upon the purchase, (whatever was included in it,) as the basis of the verdict, directing the jury to find the balance after deducting payments as stated in the account current.

This they must have done if no evidence had been offered under the count in question, or if it had been stricken out.

There being no plea in offset, and no proof of failure of any part of the consideration attempted or supposed to be passed, the simple question is, whether the real estate was included in the purchase or not. This question becomes unimportant, when it is considered that the price to be given for the purchase, whatever was included in it, must be paid.

The result is, that the plaintiffs would be entitled to their verdict upon the other counts, and to the same verdict if the count in question were expunged. The question, therefore, is reduced to this simple point of technicality, whether, the verdict being general, the existence of a count in the declaration, not sustained by evidence, vitiates the verdict.

8. The eighth exception to the charge is analogous to the fifth, and admits of the same answer. It relates to the smaller note which was given in part substitution for one of the original notes. The assignees had the same right to elect their remedy that the bank had, and might treat the note as no payment, and resort to the original cause of action. Besides, if the assignees were the real owners, they could put the suit in the name of any person as their trustee.

9 and 10. The ninth and tenth exceptions relate to the claim of the defendants on account of the debts of Burrows and Truesdell. This claim was not properly in issue, as there was no plea in offset, nor could the defendants avail themselves of it as a partial failure of consideration.

But it is utterly groundless. It appears in evidence, that two of the defendants, as directors, had themselves compromised the debt of Truesdell, and had reported the balances to the plaintiffs due from both as mere nominal balances, not in reality due. The whole difficulty arises from the fact that these balances were not transferred on the books of the bank to the account of profit and loss, as they should have been, but were suffered to remain upon the list of suspended debts. The defendants have seized upon this circumstance as amounting to a representation that they were due. But if the defendants were fully advised of the condition of these debts, they could not have been deceived or defrauded. They knew how these items came upon that list, and how they should have been taken from it.

There was certainly no express warranty that these debts were due; and there can be no implied one against facts which are fully disclosed to the party.

The utter groundlessness of the defendants' claim, so far as regards the Burrows debt, is further apparent from the fact, that all the securities for that debt had been surrendered to Burrows in May, 1835, and there was in the Burlington branch, at the time of the purchase, (March, 1836,) no evidence of any indebtedness on the part of Burrows. Of course, no such securities could have been delivered to the defendants. But, when they came to execute their contract, they would be governed, not by the list of suspended debts, but by the securities actually delivered. They could not suppose they purchased what was not delivered; and how could they suppose they were purchasing a debt for which there was no security in existence? It will not do to say that they purchased relying on the entry in the books alone; for those who were directors had the custody of the securities before the purchase. Nay, even if they did purchase relying on the entries in the books, how are they defrauded? The directors of the branch had not only the custody and control of the securities, but of the books also. The parent board could know nothing of either, except by information from the branch itself. If there was a discrepancy between the statement on the books and the reality, who was in fault? If the defendants furnished the deceptive document upon which the parties act, who is defrauded? Or, rather, who would be defrauded, if the plaintiffs are to be held liable to the defendants for a fraudulent representation furnished by the defendants themselves?

Mr. Justice NELSON delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States for the District of Vermont.

The suit was brought in the court below by the bank against the defendants to recover a balance claimed to be due, of the purchase-money agreed to be given for the property and assets of their branch at Burlington. The amount of the purchase-money was a fraction under one hundred and forty-two thousand dollars, ($142,000,) payable in instalments; and for securing payment of which four notes of thirty-five thousand five hundred dollars ($35,500) each, were executed and delivered at the time. These notes were payable to "·Samuel Jaudon, Esq., cashier, or order," and had not been indorsed by him to the plaintiffs, nor in blank.

The declaration contained the usual money counts, an account stated, and also counts for the original consideration of the notes.

On the trial the plaintiffs offered in evidence the last of the series of notes, the previous ones having been paid, for the purpose of sustaining the action, which was objected to on the ground that no title was shown in the bank, the note not having been indorsed. This objection was sustained and the note excluded, but the plaintiffs were permitted to recover under the count for the original consideration.

The question, therefore, whether or not it was competent to connect the plaintiffs with the note by parol evidence, that it had been given to their cashier, and was their property, is not in the case, and need not be passed upon.

It was objected at the trial that the plaintiffs could not recover under the counts for the original consideration, on the ground that the notes had been received in payment and satisfaction of the indebtedness; and hence the recovery must be upon the notes themselves if at all. But the court held that the mere acceptance of the notes by the bank did not necessarily operate as a satisfaction; and that, whether or not there was an agreement at the time to receive them in satisfaction, or whether the circumstances attending the transactions warranted such an inference, were questions for the jury; and submitted the questions accordingly.

It was also objected, that, in order to entitle the plaintiffs to recover under the counts for the original consideration, they must first produce all the previous notes given for the purchase-money, and surrender them in court. And, further, that before there could be a recovery for that portion of the consideration, consisting of the real estate, the plaintiffs were bound to prove the execution, and delivery of the conveyances of the same to the defendants. But the court held, as to the first objection, that,

as it was conceded on both sides that the previous notes had been paid, the presumption of law was, they had been given up by the holder at the time of payment, as the party was not bound as a general rule to make the payment, without receiving the note as his voucher; and, that, if the fact was otherwise, the burden lay upon the defendants to show it.    And as to the second objection, inasmuch as the contract had been executed, and the defendants had given their notes for the purchase-money, the court was bound to presume that they were satisfied with the execution on the part of the plaintiffs, and, of course, that the proper conveyances had been made and delivered, and that, if the fact was otherwise, it was incumbent upon the defendants to show it.

This court is of opinion that no error was committed in either of the various rulings at the Circuit to which we have referred, nor, indeed, as it respects either of the other questions in the case, not thus far particularly noticed; but which appear upon the record.

Those remaining that bear upon the merits of the defence, and which we propose to notice, relate to two items of indebtedness upon the books of the branch bank at Burlington — the debt of Truesdell & Son of $4,884.48, and of Silas E. Burrows of $2,538.86.    These items were among those on the list of suspended debts made out by the cashier of the branch preparatory to the negotiation for a purchase by the defendants of its assets, and to the settlement of the terms of sale by the parent bank.    They were of considerable standing at the branch, and had been previously returned by the directors to the parent bank in several semi-annual returns as not only bad but desperate, and were inserted in what was called the list of suspended debts, amounting in the aggregate to a fraction short of $27,000 preparatory to the sale, and for which the defendants offered and the plaintiffs accepted five thousand dollars ($5000).

These two items, it was insisted, should be credited to the account of the defendants, inasmuch as they had been compromised, as was contended, and settled by the plaintiffs before or after the time of purchase; and, that as they had been inserted in the list of suspended debts, the defendants had reason to believe, when they made the purchase, they were outstanding existing demands, though of doubtful value.

It was admitted by the counsel for the plaintiffs, that, if his clients had compromised either of these debts, or had received any portion of them since the sale, they would be responsible for the fair value of the demands or the money received, at the election of the defendants.    But, that if these demands, or either of them, had been compromised, and closed previously to the

sale to the defendants, by the board of directors of the branch, at Burlington, inasmuch as there was no warranty of the debts and two of the purchasers were members of the board, and, of course, cognizant of the compromise, and settlement, all the defendants being joint purchasers, were chargeable with knowledge, and, therefore, there was no ground for an implied fraudulent representation on account of these two items having been inadvertently placed on the suspended list.

It was also urged by the counsel for the plaintiffs, that the condition of the debts on the books at the Burlington branch must have been well known to the board of directors there—much better known to them, than to the board of the parent bank; and, that the latter must necessarily have relied mainly upon information derived from the former as to the condition of the assets, with a view to make an estimate of their value.

The court took this view of the case at the trial, and left the facts to the jury. And, upon a review here, it is the opinion of this court, that no error was committed in the direction.

The facts were, that the Truesdell debt had been compromised by the directors of the branch at Burlington, with the assent of the parent bank, more than a year previous to the sale to the defendants, and the original debt discharged; and the better opinion from the evidence, is, that the amount for which the debt was compromised was paid at the Burlington branch previous to the sale. At all events, there is no evidence whatever that any part of it has been received by the parent bank since that time. If it has been paid since, it must have been paid to the defendants who held the substituted paper under the transfer of the assets of the branch.

Under these circumstances, we think, the defendants were bound to show, in order to entitle themselves to the credit for this item of the suspended debts, that the parent bank had either received the money on it or had appropriated the securities so as to make them their own since the sale. And, as there was no evidence warranting either conclusion, it follows, the direction of the court below was right.

As it respects the Silas E. Burrows debt—it appears that this debt was compromised at 33$\frac{1}{3}$ per cent. as early as May, 1835; and the original securities surrendered on taking the new security for $922.17. This security has never been interfered with by the parent bank; and if unpaid at the time of the sale, remained in full force at that time, and since, in the hands of the defendants.

The parent bank subsequently, in December, 1840, compromised a large indebtedness of Burrows, but in this, and all other

21 *

subsequent negotiations with him, they expressly excluded the debt at the Burlington branch, as no longer under their control.

For these reasons we are satisfied the judgment of the court below is right, and should be affirmed.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Vermont, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby affirmed with costs and damages at the rate of six per centum per annum.