HARDIN *et al.* v. DALE *et al.*

No. 3919.    Opinion Filed February 23, 1915.

(146 Pac. 717.)

1.    **BILLS AND NOTES—Bona Fide Purchaser.** H. and others made, executed, and delivered their promissory note in payment for school furniture to a manufacturing company, as payee. Prior to its maturity, the consideration failed, and the company was notified of that fact. By vote of its board of directors, for value and before maturity, the company sold and through its president conveyed by indorsement said note to one of its directors. **Held,** in a suit thereon by him against the makers, that he was not a purchaser in good faith, and hence the court erred in sustaining a demurrer to the evidence in support of that plea.

2.    **BILLS AND NOTES—Knowledge of—Director—Defects in Commercial Paper.** A director of an industrial corporation is chargeable with knowledge of everything it is his duty to know concerning commercial paper belonging to the corporation, which he undertakes, as a director, to sell.

(Syllabus by the Court.)

*Error from Superior Court, Logan County;*

*S. S. Lawrence, Judge.*

Action by Frank Dale and another against E. W. Hardin and others. Judgment for plaintiffs, and defendants bring error. Reversed, with directions.

*J. F. McKeel* and *C. G. Horner,* for plaintiffs in error.

*Dale & Bierer,* for defendants in error.

TURNER, J.    On June 28, 1911, Frank Dale, defendant in error, sued E. W. Hardin and six others, as makers on their past-due promissory note for $1,495.65, made, executed, and delivered on September 16, 1909, to the Guthrie School & Office Furniture

Manufacturing company, as payee, and by the company indorsed to the plaintiff Frank Dale. The petition alleged that plaintiff acquired the note in good faith for value and before maturity. For answer defendants, in effect, admitted the execution of the note and its indorsement as pleaded, and that plaintiff had paid value therefor before maturity, but set forth facts sufficient to constitute a failure of consideration, and denied that plaintiff was a purchaser in good faith. There was trial to a jury and judgment for plaintiff, and defendants bring the case here. To maintain the issues on his part, plaintiff introduced the note in evidence and rested. Whereupon defendant demurred to the evidence, which was overruled. There was no error in this. In *Forbes v. First National Bank of Enid,* 21 Okla. 206, 95 Pac. 785, we said:

"Plaintiff's possession of the draft, indorsed by the payee in blank, was *prima facie* that it acquired the same in good faith for value, in the usual course of business before maturity.   *   *   *"

Although the note contained the following:

"The makers and all indorsers hereof severally waive presentment for payment, protest and notice of protest and consent that time of payment may be extended without notice thereof   *   *   *"

—the same was negotiable. *Missouri-Lincoln Trust Co. v. Long,* 31 Okla. 1, 120 Pac. 291.

There is no conflict in the testimony. Assuming the burden of proof upon the issue of failure of consideration and want of good faith, defendants introduced evidence tending to prove that the note was given in payment for school furniture, and, before it was due, the payee indorsed the same in blank to plaintiff. The indorsement was for value, and reads:  "The Guthrie School & Office Furniture Mfg. Co., by E. M. Hegler, Pres." It was made October 9, 1909. Prior thereto the consideration of the note failed, and the payee knew it, and also knew that the makers would

resist payment on that ground. At that time plaintiff was a director in the company and also a stockholder. On October 4, 1909, defendants wrote the payee thus:

"The whole lot of furniture is unsatisfactory, and, unless some adjustment is made, the state will refuse to take it, and the payment of the note will be protested."

About three days thereafter the payee sold and indorsed the note to plaintiff. On this state of the evidence the court sustained a demurrer thereto and directed a verdict for plaintiff. This was holding that the legal effect of the evidence did not reasonably tend to prove that plaintiff was not a purchaser in good faith. The court erred. From this evidence it may be fairly inferred that here is an industrial corporation, the payee in a promissory note, with knowledge on its part and that of each and every one of its directors that the consideration for the note had failed, acting through the same board, presumably by vote, selling that note to one of the board. Can it be said that such member of the board took it in good faith? We think not. We say this note was sold by vote of the board for the reason that as no one questioned the authority of Hegler to indorse it in blank, as he did, it is fair to presume, as this corporation was not dealing in commercial paper but in manufacturing, that Hegler was duly authorized so to do. And how was he authorized? As there is no evidence tending to prove that he had express general authority to indorse such paper, and no evidence tending to prove any implied general authority so to do arising from such frequent exercise of the power, we are forced to conclude, as stated, that he was authorized to make this indorsement by express authority of the board, which could only be done by vote of the board. In *Elwell v. Puget Sound, etc., R. Co.,* 7 Wash. 489, 35 Pac. 377, it is said:

"Whatever else the general agent of an industrial corporation may do to bind his principal by contracts made by virtue of his

implied authority, when it comes to uttering negotiable paper to which, in the hands of innocent holders, there can be practically no defense, a strict rule applies. The agent must either have express general authority to issue such paper, or express authority to issue the particular paper, or there must be implied general authority arising from such frequent exercise of the power by the agent, followed by ratification, as to constitute a custom of the corporation."

Being authorized so to do by a vote of the board, each and every member thereof, including plaintiff, was at the time of the sale and indorsement in question chargeable with knowledge that the consideration of this note had failed, and that it would be worthless, should that defense to a suit thereon against them be interposed by the makers.

A director of an industrial corporation is chargeable with knowledge of everything it was his duty to know concerning commercial paper belonging to the corporation, which he undertakes, as director, to sell. *In Re Newcastle-upon-Tyne Marine Ins. Co., Exparte Brown,* 19 Beavan, 97, Sir John Romilly, Master of the Rolls, said:

"A person 'when he becomes a director accepts a trust, which he undertakes to perform for the benefit of the company. If, in the due performance of that trust, he must necessarily have acquired certain knowledge, it appears to me to be but fit that he should be charged with knowledge of those facts which it was his duty to have become acquainted with. It is merely saying that a person should be held to know that which it was his bounden duty to know."

In *Gay v. Young Men's, etc., Inst. et al.,* 37 Utah, 280, 107 Pac. 237, the court, quoting approvingly from 21 Am. & Eng. of Law, 896, said:

"As a general rule, an officer or director of a corporation is chargeable with knowledge of all matters relating to the affairs of the corporation which he actually knows or which it was his

duty to know. Thus, in actions by strangers against an officer or
director, the defendant will generally be charged with knowledge
of all facts relating to the condition and business of the company
which he might have known by the exercise of due diligence,
whether actually known to him or not."

In that case, the husband of respondent having a suit, pend-
ing against him on a promissory note payable to the defendant
corporation, she, to settle the same, conveyed to it certain lands
upon condition that the corporation would hold the title in trust
for her and sell the same at the best price obtainable, but not for
less than a sum certain, pay the demand out of the proceeds,
and return the balance to her. Thereafter the company sold the
land to Rockhill, one of its directors, for less than it was worth,
in violation of the terms of its trust. Whereupon she sued to en-
force the trust and to secure an accounting against them both.
Rockhill claimed he had bought the property in good faith and
without notice of the trust. But the trial court found that he, as
a director of the corporation, was chargeable with knowledge of
the agreement between the respondent and the company, and
hence of the trust, and therefore was not a *bona fide* purchaser of
the land. After holding that the company acted as trustee in the
premises, and as such was liable to account under the terms of the
trust, the court, in answering the question whether Rockhill took
the land subject thereto, said:

"The answer to this question depends upon two things,
namely: Rockhill's relation to the corporation, and the character
of the transaction by which it obtained title to the land in ques-
tion. Rockhill's relation to the corporation was that of director
and vice president. Whenever a corporation in this state exer-
cises its powers, it must do so through the board of directors,
since, under our statute (Comp. Laws 1907, sec. 324), all corpor-
ate powers are vested in and 'shall be exercised by the board of
directors.' No doubt the majority of the board, when regularly
convened, may exercise any of the corporate powers, in the
absence of the minority, and bind such minority if the acts of
the majority are not *ultra vires* or in violation of some positive

statute, or of some general law, or are void or voidable as against public policy. The minority are not only bound by the acts of the majority, but the minority members are charged with knowledge of all the legal corporate acts that are exercised as aforesaid. If, therefore, the majority acquires any property in trust, every director is charged with knowledge of the trust relation, and, as against the claims of those for whom the corporation became trustee, such member has and can acquire no better right to the trust property than the corporation has. In this regard, it can make no difference whether the majority of the board of directors directly exercise the corporate power or authorize some agent to do so. The act is still the exercise of a corporate power of which every director, as against strangers to the corporation, is assumed to have notice."

And after quoting, as indicated, further said:

"This text is sustained by the authoirties. *Merchants' Bank v. Rudolph,* 5 Neb. 527; *Greenville Gas Co. v. Reis,* 54 Ohio St. 549, 44 N. E. 271. The last case, in principle, is precisely like the case at bar. In that case the corporation obtained certain bonds in trust. One of the directors subsequently purchased the bonds from the corporation, and in an action against him set up the claim that he knew nothing about the trust agreement; that he purchased the property in good faith for value and without notice. The court, however, brushes his claim aside, and holds that, as directors of the corporation, he must be held as having had knowledge of the trust agreement, although he was absent from the board meeting and had no actual knowledge that the board of directors entered into the agreement."

In the fifth Nebraska case, *supra,* it was held that if a cashier, on inquiry by a surety, not an officer of the bank, stated that the note upon which he was surety had been paid by the principal, the bank was estopped to deny the truth of such statement, when to do so would entail loss on the surety which he could have avoided had the statement not been made, but that such rule had no application where the surety was one of the directors of the bank, for the reason that he had means of knowing the true con-

dition of its affairs and was conclusively presumed to know whether payment was made or not.

*Nelson et al. v. Wellington,* 5 Beavan, 178 was a suit to recover on a promissory note for $351.25 payable to the Atlas Insurance Company, which, prior to maturity, the company has turned over as collateral to plaintiffs as trustees of an express trust. The facts were that the company, in order to raise money for business purposes, borrowed a number of notes from its friends, which it discounted, and so used the money. To secure its payment, the company deposited with plaintiffs, who were also members of its board of trustees, the note in suit. The note was executed by defendants for advanced premiums on merchandise to be shipped, and, when shipped and reported to the company, the risk was to be indorsed on an open policy of insurance, or otherwise accepted. The question was whether this collateral note could be recovered by the trustees in full or only for the amount of the premiums for risks so indorsed. In passing the court said that the note was binding in the hands of the insurance company, and that the plaintiffs took no better title than the company itself had, as they were officials or trustees of the company, and must be deemed to have knowledge of the title of the company to the note. Or in other words, as we understand the case, that it would not do for the plaintiffs to say that they took the note other than subject to all the equities existing between the original parties. And so we say it makes no difference whether plaintiff was absent from the board meeting or not at the time of the sale and indorsement of the note in question, or whether he participated in or actually knew the "particulars" of this transaction or not. His duty under his trust, as director, being to know the value of this note, and necessarily its affirmities, he was chargable with knowing, and cannot be held to be a purchaser in good faith or to have acquired thereto a better title than the payee had. See, also, *Lyman et al. v. President, etc., of the Bank of the United States,* 12 How. 225, 13 L. Ed. 965; *United Society of*

*Shakers v. Underwood*, 9 Bush (Ky.) 609, 15 Am. Rep. 731; *Nelson et al. v. Wellington*, 5 Bosw. (N. Y.) 178; Thompson on Corporations (2d Ed.) sec. 1672; *Martin v. Sheriff, et al. v. Webb et al.*, 110 U. S. 7, 3 Sup. Ct. 428, 28 L. Ed. 49.

Let the cause be reversed, with directions to let it go to the jury on the equities existing between the original parties.

All the Justices concur.