### MURPHY v. ESTLE et al.

No. 8605.—Opinion Filed June 17, 1919.

(Syllabus by the Court.)

**1. Bills and Notes——Bona Fide Holder— Notice to Stockholder.**

Where the trial court gives the following instruction to the jury: "You are further instructed that if you should find from the evidence that the plaintiff Murphy was a stock-

holder in the Independent Harvester Company at the time he purchased the original note, of which the one now in suit was a renewal, that then he, as a stockholder in said company, is chargeable with notice of the condition of the said company and of the manner in which its business was conducted, including the sale of the stock in question to the defendants"—it is held error, for the reason that the stockholder is not chargeable with such notice.

**2. Bills and Notes—Qualified Indorsement—Effect.**

A qualified indorsement constitutes the indorser a mere assignor of the title to the instrument. It may be made by adding to the indorser's signature the word "without recourse," or any words of similar import. Such an indorsement does not impair the negotiable character of the instrument.

Error from County Court, Woodward County; Clyde H. Wyand, Judge.

Action by J. H. Murphy against F. J. Estle and another. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

S. E. Galbreath and S. M. Smith, for plaintiff in error.

Swindall & Wybrant, for defendants in error.

PITCHFORD, J. This is an appeal from the county court of Woodward county, wherein the plaintiff in error had brought an action against the defendants in error, seeking to recover judgment upon a promissory note executed by defendants to the Independent Harvester Company and assigned by the latter to the plaintiff before maturity. The trial resulted in judgment in favor of the defendants. The assignments of error are varied and numerous. We have neither the time, nor do we deem it necessary, to pass upon each and every assignment. The instructions given by the trial court to the jury were voluminous, and it would have been extremely doubtful if a Marshall or a Story could have given instructions of the number and length of those given by the trial court without committing some error either grave or technical.

In the second instruction, the jury is instructed as to the burden of proof. We have carefully examined this instruction and conclude that the plaintiff is not prejudiced thereby. In the third instruction, the court defines the preponderance of evidence by stating that by the term "preponderance of evidence" is meant that kind and quality of evidence which is more satisfactory, satisfying, and convincing to the minds of the jurors. Had all the instructions given by the court been as succinct and clear as this instruction, then probably the plaintiff would not have had so many causes for complaint. While we realize there are many definitions as to just what is meant by "preponderance of evidence," however, we are mindful of the fact that it is almost as difficult to define what is meant by this term as it is to define "reasonable doubt." We fail to see any error in this instruction.

The same may be said as to instruction No. 5.

Instruction No. 6 is as follows:

"You are further instructed that if you should find from the evidence that the plaintiff Murphy was a stockholder in the Independent Harvester Company at the time he purchased the original note, of which the one now in suit was a renewal, that then he, as a stockholder in said company, is chargeable with notice of the condition of the said company, and of the manner in which its business was conducted, including the sale of the stock in question to the defendants."

It appears from the evidence that the Independent Harvester Company had sold stock in the company to the defendants, the defendants executing their joint note therefor. The harvester company hypothecated this note, with many others executed for shares in the company, to the plaintiff to secure a large sum of money borrowed from the plaintiff. The evidence is not at all clear as to whether or not the plaintiff was a stockholder; but, assuming that he was, we should be compelled to hold this instruction erroneous. To charge the jury that the plaintiff, merely by being a stockholder in the corporation, would be chargeable with notice of the condition of the corporation and the manner in which its business was conducted, including the sale of the stock in question to the defendants, thereby allowing the defendants the same defense against a bona fide purchaser as they would have against the harvester company, to say the least, would be very inconsistent. If this knowledge is imputed to the plaintiff being a stockholder, why would not the same notice be imputed to the defendants who were stockholders? Therefore, under this instruction, whatever knowledge the plaintiff had would also be imputed to the defendants. One being merely a stockholder is not required to possess the knowledge stated in the instruction. The business of a corporation is not conducted by the stockholders, but by the board of directors, elected, it is true, by the stockholders. We have been unable to find any decision, nor has counsel cited us to any, holding that a stockholder is chargeable with this knowledge. In Hardin v. Dale, 45 Okla. 695, 146 Pac. 717, L.

R. A. 1915D, 1099, it was held that a director of an industrial corporation is chargeable with knowledge of everything it is his duty to know concerning commercial paper belonging to the corporation which he undertakes, as a director, to sell. To the same effect is Producers' National Bank v. Elrod, 68 Oklahoma, 173 Pac. 659, L. R. A. 1918F, 1016. See, also, 21 Am. & Eng. Cyc. of Law, p. 896.

By this instruction, the jury was practically told to return a verdict in favor of the defendants. The instruction is clearly erroneous.

Plaintiff also complains of instruction No. 7, as follows:

"The court instructs the jury that, where a party purchases a note which is indorsed to him 'without recourse,' he takes the same as a mere assignor, subject to all of the equities and defenses existing between the original parties to the note which existed at the time of the assignment, or which may arise afterwards, and of which the maker did not have notice or knowledge at the time of the assignment."

Section 4088, Rev. Laws 1910, is as follows:

"Qualified indorsement constitutes the indorser a mere assignor of the title to the instrument. It may be made by adding to the indorser's signature the words 'without recourse,' or any words of similar import. Such an indorsement does not impair the negotiable character of the instrument."

Section 4102, Id.:

"A holder in due course is a holder who has taken the instrument under the following conditions: First. That it is complete and regular upon its face. Second. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact. Third. That he took it in good faith and for value. Fourth. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

We have gone over the evidence in the case and fail to discover any evidence that would have justified a judgment in favor of the defendants even had the action been brought by the Independent Harvester Company. There is an entire absence of any evidence establishing fraud in the dealings of the harvester company and the defendants. It would appear that the object and purposes in the minds of all the parties at the time of the execution of the original note herein were in good faith. The matters set up by the defendants as a defense could not prevail against the original payee. There is nothing to indicate that any fraud or misrepresentation was used at the time.

It might be, and no doubt was true, that the enterprise did not realize the expectations of the promoters. This probably is true in the great majority of enterprises launched by individuals; but evidence to substantiate fraud is lacking. There is nothing to indicate that the plaintiff did not take the note from the harvester company against the defendants in absolute good faith. It was taken before due and for a valuable consideration.

In the case of First State Bank of Oklahoma City v. Tobin, 39 Okla. 96, 134 Pac. 395, Mr. Commissioner Sharp said:

"The owner of a negotiable promissory note, who obtains it before maturity for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a title valid against all the world."

In Farmers' Bank of Roff v. Nichols, 25 Okla. 547, 106 Pac. 834, 138 Am. St. Rep. 931, 21 Ann. Cas. 1160, Mr. Justice Hayes said:

"A negotiable promissory note was executed in payment of the premium on some life insurance policies. At the time of the delivery of the note to payee, who was agent for the insurance company, the payee executed a written agreement that, if the maker of the note within a stipulated time investigated the company and found it not satisfactory or as represented, the note or the amount thereof in cash would be refunded to the maker by the payee. Held, that the contemporaneous agreement did not constitute the delivery of the note a conditional delivery or deny to the payee the right to transfer the same, and that one who purchased the note in due course of business, before maturity, for a valuable consideration, could recover in an action thereon, although at the time of the transfer he had notice of the contemporaneous agreement."

To the same effect, see Conqueror Trust Co. v. Simmon, 62 Oklahoma, 162 Pac. 1098; Showalter v. Webb, 42 Okla. 297, 141 Pac. 439.

Were we to let the judgment in this case stand under the proof adduced at the trial, then we would, in effect, say of all law, so far as the same concerned negotiable paper, that it might as well be swept aside. Evidently after it was discovered that the enterprise inaugurated by the Independent Harvester Company had failed to realize the promises of its promoters, the stockholders, as would be natural, became dissatisfied, and, whether fleeced or not, no doubt conceived themselves to be, and then sought to repudiate the obligations they had executed for stock in the company. We gather from the evidence that the harvester company erected a very expensive plant. There is nothing to

show that any of the promoters were actuated by bad faith. Under the proof in the case, it was really the duty of the trial court, upon the conclusion of the evidence, to instruct a verdict in favor of the plaintiff. Under all the authorities that we have been able to examine, the defense in this action completely failed to measure up to the requirements of the law. Westlake v. Cooper, 69 Oklahoma, 171 Pac. 859, L. R. A. 1918D, 522; Cedar Rapids Nat. Bank v. Bashara, 39 Okla. 482, 135 Pac. 1051; Citizens' Savings Bank v. Landis, 37 Okla. 530, 132 Pac. 1101; Security Trust & Savings Bank of Charles City, Iowa, v. Gleichmann, 50 Okla. 441, 150 Pac. 908, L. R. A. 1915F, 1203.

It is not necessary to notice the other assignments of error, as we do not believe the substantial rights of the plaintiff were, or could have been, affected thereby.

The judgment of the trial court is reversed, and the cause remanded.

OWEN, C. J., and HIGGINS, SHARP, and McNEILL, JJ., concur.