### BANKERS' TRUST CO. OF NEW YORK v. T. A. GILLESPIE CO. OF NEW JERSEY.

(Circuit Court of Appeals, Fourth Circuit.  July 13, 1910.)

No. 950.

1. MECHANICS' LIENS (§ 173*) — TIME OF ATTACHING — RELATION BACK — NORTH CAROLINA STATUTE.

Under the mechanic's lien statute of North Carolina (Revisal 1905, §§ 2016, 2028), which gives a lien on property for all debts contracted for work done on the same or material furnished, and requires a detailed statement of the claim to be filed in the office of the superior court clerk of the county within 12 months after the completion of the labor or the final furnishing of the materials, as construed by the Supreme Court of the state, where the claim is filed within the time and in the manner prescribed, the lien relates back to the time of the beginning of the work or furnishing of the materials, and is effective against any subsequent incumbrancers or purchasers.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 304; Dec. Dig. § 173.*]

2. PAYMENT (§ 18*) — REQUISITES — ACCEPTANCE OF NOTES BY THIRD PERSON.

The acceptance by a contractor for work of notes of a third party for sums which have become due under his contract do not operate as a payment of the debt in the absence of an agreement to that effect, either express or to be inferred plainly from the circumstances and conduct of the parties.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 78–85; Dec. Dig. § 18.*]

3. MECHANICS' LIENS (§ 239*) — PAYMENTS.

A corporation engaged in the construction of a large power plant executed a mortgage to a trustee, and placed its bonds secured thereby in the hands of the trustee for sale under an agreement that the proceeds should be paid out by the trustee only on vouchers showing that a like amount had been expended for the benefit of the corporation. At times when the corporation was without funds to meet payments due the contractor for the work its president and his partner gave their notes for the amount which the contractor indorsed and discounted. On one occasion the president of the corporation induced the treasurer of the contractor by misrepresentation to include in a receipt for a payment $100,000, for which such notes had been taken, and the president afterward by the use of such receipt as a voucher drew a like amount from the trustee from the funds of the corporation. The notes covered by such receipt

were not paid, and were taken up by the contractor. The corporation became insolvent owing a balance to the contractor for which it obtained a decree establishing a mechanic's lien, which took precedence of the mortgage in a suit to which the mortgage trustee was a party. The president of the corporation owned $100,000 of its bonds which were held by the contractor as collateral to his notes, and which it surrendered to the court on taking decree for a lien. *Held* that, under the circumstances, the other bondholders were not entitled to require the contractor to credit the $100,000, so erroneously receipted for on its claim.

[Ed. Note.—For other cases, see Mechanics' Liens, Dec. Dig. § 239.*]

4. CONTRACTS (§ 232*)—BUILDING CONTRACT—CONSTRUCTION.

A contract for the construction of a power plant provided that the owner should pay the actual cost of labor and material, and pay the contractor a commission of 20 per cent. thereon, but, if such cost should exceed $1,500,000, commissions should only be paid on that amount. The work was to be done in accordance with specifications which were made part of the contract, but it further provided that the owner might make any changes in the quantity of work or materials deemed desirable, and that, if the cost should thereby be increased beyond the maximum fixed, the contractor should be entitled to commissions on such increase. The work was greatly enlarged by the owner's engineer by its orders, and the engineer included the additional work in his monthly statements on which the contractor was allowed and paid commissions as the work progressed. The cost of the work included in the original specifications was less than the maximum fixed. *Held* that, on the insolvency of the owner, its mortgagee was not entitled to object to the allowance to the contractor of commissions on the entire cost.

[Ed. Note.—For other cases, see Contracts, Dec. Dig. § 232.*]

5. MECHANICS' LIENS (§ 239*)—APPLICATION OF PAYMENTS BY CREDITOR—SECURED AND UNSECURED DEBTS.

Where a contractor furnished labor and materials for which it was entitled to a mechanic's lien, and other items for which it was not entitled to a lien, and on full statements made by the owner's engineer, including both classes of work, it made payments generally, the contractor was entitled to apply such payments to the nonlienable items.

[Ed. Note.—For other cases, see Mechanics' Liens, Dec. Dig. § 239.*]

Appeal from the Circuit Court of the United States for the Western District of North Carolina.

Ancillary bill filed by the T. A. Gillespie Company of New Jersey in a creditors' suit against the Whitney Company and others. Decree for the Gillespie Company, from which the Bankers' Trust Company of New York, trustee, appeals. Affirmed.

On the 29th of December, 1904, a contract was entered into between the T. A. Gillespie Company, a New Jersey corporation, and the Whitney Company, a corporation under the laws of North Carolina, for the construction of a canal, dam, and structures on the Yadkin river at or near Hall's Mill Ferry, in the counties of Stanly and Montgomery, in the latter state. The substance of the contract was that the Gillespie Company was to furnish all materials, and to construct and complete the said canal, dam, together with the bulkhead, spillways, wasteways, culverts, abutments, and other structures. The purpose of the work was to establish a plant for the generation and distribution of electric power. The Whitney Company agreed to pay the actual cost of the work to the contractor, including all expenditures by the contractor for materials, labor, supplies, explosives, maintenance of tools, plant, appliances, traveling expenses of foreman and laborers, and all of the expenditures directly connected with the construction of the said work, and also the actual cost of the work referred to in the contract as unclassified work, and a sum

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

equal to 20 per cent. of the cost. to the contractor of the work classified in the contract, and a sum equal to 10 per cent. of the cost of the work included in the contract as unclassified work. In order that the amount of compensation to the contractor, and the terms and conditions of payment may be more fully understood, the following is copied from the contract: "The compensation of the contractor shall also include, and the company agrees to pay to the contractor the sum equal to twenty (20%) per cent. of the cost of the work to the contractor, as determined in the manner hereinbefore provided, together with twenty (20%) on the combined royalty and rental of seventy-five cents to be paid by the company to the Rowan Granite Company.for each cubic yard of masonry constructed of its stone, and 20% on the cost of the granite that has been delivered at Hall's Mill Ferry by the company, provided, however, that no percentage shall be paid to the contractor on the amount of railroad freight charges for delivering stone at Hall's Mill Ferry, and provided further that the contractor's compensation for 'Unclassified Work' shall include a sum equal to 10% of the cost of said work to contractor. The company agrees to include in the contractor's compensation, and to pay the contractor twenty per cent. (20%) on $1,200,000, if the sum of the cost of the work to the contractor and royalty and rental, on which the contractor is entitled to receive 20%, should amount to less than $1,200,000, but, in the event of the company's taking possession of, and constructing any part of said canal, dam, and other structures, under the terms of this agreement, the contractor's compensation shall include 20% on the cost of only the work actually constructed by the contractor. The contractor agrees that if the sum of the cost of the work to the contractor, and royalty and rental, on which the contractor is entitled to receive 20%, shall amount to more than $1,500,000, the contractor's compensation shall include twenty (20%) per cent., on only one million five hundred thousand ($1,500,000) dollars. The contractor agrees to permit the company's engineer or other person designated by the company to examine the contractor's accounts and vouchers relating to the expenditures made in connection with work included in this agreement. On or before the fifth day of each month, the company's engineer shall prepare a correct statement showing the amount of money earned by the contractor during the preceding month, under the terms of this agreement, and the company agrees to pay the contractor, on or before the tenth day of each month, the total sum of money earned during the preceding month, as correctly shown by such statements, provided, however, that all the money earned by the contractor in excess of $50 M. before the first day of May, 1905, shall not become due until the fifteenth day of May, 1905."

The Gillespie Company commenced to work and furnish materials under the contract about the 1st of January, 1905, and continued in the performance of the same, and the construction of the work contemplated by furnishing labor and materials to February 14, 1908, a few days after receivers were appointed for the Whitney Company. On the 3d of February, 1908, a bill was filed by certain of the creditors of the Whitney Company in the Circuit Court of the United States for the Western District of North Carolina, and upon due proceedings had John S. Henderson was on that day appointed receiver of the property, estate, and effects of the said Whitney Company, and on the 4th of April following Charles W. Smith was, by the said court, appointed co-receiver with the said Henderson, both of whom qualified, and are the acting receivers of the said company. On the 28th of March, 1908, the T. A. Gillespie Company filed in the offices of the clerks of the superior courts of the counties of Montgomery and Stanly, and had therein recorded, a notice of lien upon the property of the Whitney Company, which said notice was thereafter amended by permission of the state courts, and of the Circuit Court of the United States, and was recorded as required by the North Carolina statute as a lien upon the property of the Whitney Company for a balance due upon the labor performed and materials furnished under the contract for the sum of $298,680.53. The mortgage in which the appellant, the Bankers' Trust Company, is trustee, was executed by the Whitney Company on the property upon which the lien is claimed by appellee to secure the payment of certain "first mortgage bonds." The facts in regard to said mortgage, as found by the master, are as follows:

On April 3 and 4, 1905, the Whitney Company recorded in Stanly and Mont-

gomery counties, N. C., a deed of trust to the Bankers' Trust Company of New York to secure the issue of "first mortgage bonds" to the amount of $5,000,000. These bonds were all issued and certified by the trustee and delivered to the Whitney Company. Subsequently the Whitney Company deposited with the Bankers' Trust Company $3,000,000 of these bonds under the terms of a resolution passed by the board of directors of the Whitney Company, October 14, 1904. This resolution provided for the delivery of these bonds by the Trust Company on the receipts of cash for the par value and interest, and that the funds so obtained should be paid out by the Trust Company on vouchers signed by the officers of the Whitney Company stating that the amount of money called for by the voucher had been expended in the interest of the company, and that the funds called for by voucher were required to reimburse the party who had made the advance. The net result of the transaction was the withdrawal of bonds for the amount of money already advanced. The payment of money for the bonds, withdrawing the bonds, and withdrawal of the funds took place simultaneously in most cases. Occasionally the money was left for a short time on deposit. Receipts from the Gillespie Company for money received were often used as a basis for these vouchers. They were not a necessary basis. The contractor was not a party to this transaction, but was aware of the use of the receipts by him. By this method a considerable part of the funds paid to the contractor during the progress of the work was raised. It appears, further, that the Whitney Company was without credit (in fact, shortly after the receivers were appointed, the company was adjudged bankrupt) and large amounts of money to continue the work were secured upon notes given by Whitney & Stephenson, a firm of brokers in Pittsburg, Pa., in which George I. Whitney was a partner. These notes were generally given by the said firm payable to George I. Whitney, and were endorsed by him, and by T. A. Gillespie, or by the T. A. Gillespie Company, and discounted for the purpose, as stated, of raising money to carry on the work pending the sale of the bonds. Whitney & Stephenson failed on the 7th of December, 1907, at which time there were of these notes outstanding and unpaid $251,500, which have since been assumed or paid by the T. A. Gillespie Company, the contractor. In the suit pending as heretofore stated brought by the creditors of the Whitney Company, to which the Bankers' Trust Company is a party, the court on the 8th of July, 1908, granted to the T. A. Gillespie Company leave to file in the said cause an ancillary bill for the purpose of asserting the right of the said Gillespie Company to a prior lien upon the property of the Whitney Company for the work done, and the materials furnished in the construction of the canal, dam, etc., which said prior lien was claimed by virtue of the North Carolina statute for the amount hereinbefore stated.

Upon the filing of the ancillary bill and the answer of the receivers and the Bankers' Trust Company, in which issues were raised with respect to the claim and priority of the Gillespie Company, the matter was referred to A. H. Price, Esq., as examiner to hear evidence, to take proofs, and report to the court, subject to such objections as the parties might make thereto, and thereafter, by consent of the parties, it was decreed by the court that the said Price should act as master in the case, and make his report to the court of his findings of fact and conclusions of law, and the form of decree thereon, with the right to except thereto, or appeal therefrom. Upon the first order appointing him examiner the said Price took the testimony, and upon the second order appointing him master he made his report, accompanied by his findings of fact and conclusions of law, and also his rulings upon certain exceptions which were filed by the parties to the report. The said master also made a supplemental report containing some amendments as to the findings of fact, etc., which was also excepted to by the Bankers' Trust Company and by the receivers. Upon the hearing by the Circuit Court upon the said reports and the exceptions, the exceptions were, by the court, overruled, and the report of the master ascertaining and declaring that the T. A. Gillespie Company was entitled to a prior lien under the North Carolina statute upon the property of the Whitney Company to the amount of $298,680.53 was confirmed by decree.

There are many details in the contract respecting the character of the work to be performed, the limit in which it is to be completed, the method of in-

spection, etc., which do not pertain to the present controversy, but it is deemed proper to reproduce the following quotations from the contract as relating to the several questions to be considered: "The contractor agrees that the company shall have the right to make any changes that may appear to the company to be desirable in the location, form or length of said canal, masonry, structures and auxiliaries, and to make additions or deductions from the quantities of labor and materials specified, or shown on the drawings, before or after the commencement of construction without violating this agreement, and the company agrees that if the cost of the work should be increased by changes or additions, in that event, the hereinafter specified maximum sum on which the contractor is entitled to receive twenty (20) per cent. shall be increased to the extent of such increase in cost. * * * The parties hereto agree that the company's engineer shall act as arbitrator in the settlement of every question, doubt and dispute relating to the construction and completion of said canal, dam, bulkhead, spillways and other structures, and the work of quarrying and preparing the granite, and that his determination and decisions shall be accepted as final and binding by both parties. * * * The contractor agrees to furnish all materials and to construct and complete said canal, dam, bulkhead, spillways, wasteways, culverts, abutments, and other structures, in strict conformity with the terms of this agreement and the requirements of the specifications, and in accordance with the drawing enumerated below. * * * The company and contractor agree that the specifications attached hereto, and all plans and drawings described or referred to herein are essential parts of this agreement."

On the testimony adduced the master found the following to be the true status of the account between the Whitney Company and the contractor:

"Sixth. That the T. A. Gillespie Company, in the performance of said contract, expended the amounts as shown by the following account, which is a synopsis or summary of the pay rolls and vouchers and accounts attached to the lien filed in this case, viz.:

Debit.

| | | |
|---|---:|---:|
| Quarry pay roll | $ 286,528 | 19 |
| Dam pay roll | 1,170,250 | 95 |
| Material at quarry | 86,230 | 50 |
| Material at dam | 940,880 | 87 |
| Freight | 39,578 | 96 |
| | $2,523,469 | 47 |
| Less credits deducted by engineer from the various monthly estimates | 80,339 | 10 |
| | $2,443,130 | 37 |
| Contractor's percentage | 478,084 | 74 |
| Total | $2,921,215 | 11 |
| Cash paid by the T. A. Gillespie Company for interest and discount on notes of Whitney & Stephenson | 8,016 | 77 |
| Interest on overdue balances throughout the period of the contract | 7,125 | 38 |

$2,936,357 26

—and received payment therefor as follows:

Credit.

| | | |
|---|---:|---:|
| Cash received | $2,361,258 | 69 |
| Credits allowed, including interest | 5,189 | 89 |
| Bonds taken at par in place of cash with accrued interest | 94,420 | 50 |
| Cash paid by Whitney & Stephenson on notes | 176,807 | 65 |

2,637,676 73

Leaving a balance, which is the amount for which a lien is claimed, with interest thereon from February 15th, 1908, of ........          $298,680 53

9. The lien claimed by the T. A. Gillespie Company, the contractor, is by virtue of the following North Carolina statute: "Every building built, rebuilt, repaired or improved, together with the necessary lots on which such building may be situated, and every lot, farm or vessel, or any kind of property, real or personal, not herein enumerated, shall be subject to a lien for the payment of all debts contracted for work done on the same, or material furnished. This section shall apply to the property of married women, etc." The further provision of the statute is that a claim of the character of the one in controversy specifying in detail the materials furnished, or the labor performed, and the time thereof, shall be filed in the office of the superior court clerk in the county where the labor has been performed, or the materials furnished, at any time within twelve months after completion of the labor, or the final furnishing of the materials. It is the fact that the claim in this case was filed in the manner, and within the time prescribed by the statute.

The master found as a fact that there was due the T. A. Gillespie Company, the contractor, from the Whitney Company, under the contract, a balance of $298,680.53, with interest thereon from the 15th of February, 1908, and held as a conclusion of law that the said claim was a prior lien upon the property of the Whitney Company. Upon the coming in of the report of the master, the same was heard by the Circuit Court upon exceptions thereto filed by the receivers and the Bankers' Trust Company. The exceptions were overruled, and a decree entered confirming the report of the master, and from that decree the Bankers' Trust Company appealed to this court. (The receivers did not appeal.)

W. A. Way, Thomas Patterson, Thomas J. Jerome, Charles A. Moore, and Burton Craige (Moore & Rollins, White & Case, and Patterson, Sterrett & Acheson, on the brief), for appellant.

Edwin W. Smith and William P. Bynum, Jr. (L. H. Clement, Walter Murphy, Reed, Smith, Shaw & Beal, and Cravath, Henderson & De-Gersdorf, on the brief), for appellee.

Before GOFF, Circuit Judge, and WADDILL and BOYD, District Judges.

BOYD, District Judge (after stating the facts as above). As will be seen, the work contemplated by the contract between the Whitney Company and the T. A. Gillespie Company, the contractor and present appellee, was the erection of a plant for the generation of electric power on a large scale, and its distribution over a wide scope of territory. The project may be said to have been a gigantic one, and it required a great deal of labor, immense quantities of materials, supplies, and appliances, and involved the expenditure of a large sum of money. We have given a general outline of the principal facts in the controversy, but in the course of the discussion of the points involved, and in support of our conclusions with reference thereto, we will call attention to other facts found in the record.

The priority of the lien of the mortgage over that claimed by the contractor upon the property of the Whitney Company is one of the defenses set up in appellant's answer to the appellee's bill. As we gather from the record, this proposition was insisted upon by appellant's counsel before the Circuit Court; but it is not urged here, either in their brief or oral argument. However, as the question was presented below, and is discussed in the brief of the appellee, we take occasion before passing to the contested points in the case to refer to the North Carolina authorities, and other decisions which we think

settle the principle. The T. A. Gillespie Company, the contractor, commenced the work and the furnishing of materials under the con- tract about the 1st of January, 1905, and stopped, as stated, on the 14th of February, 1908, shortly after the property of the Whitney Company was placed in the hands of receivers. The mortgage to the Bankers' Trust Company was recorded on the 3d and 4th of April, 1905.

The theory advanced was that the lien provided in North Carolina for labor and materials did not attach to the property until notice of lien was filed under the provisions of the statute. The Supreme Court of North Carolina in construing the acts of the Legislature of that state pertaining to the question has held to the contrary. There are several decisions of that court that we might cite, but a leading case which covers the entire principle is that of Burr & Bailey v. Maultsby et al., 99 N. C. 263, 6 S. E. 108, 6 Am. St. Rep. 517, in which it is held:

"Upon the filing of the notice within the time and in the manner prescribed by the statute, the lien given mechanics and laborers attaches to the prop- erty upon which the labor or materials have been bestowed and has relation back to the time of the beginning of the work or furnishing the materials; and is effectual, not only against all other liens or encumbrances which at- tached subsequently, but against purchasers for value, and without notice."

To the same effect are the decisions in Chadbourn et al. v. Williams and the Mechanics' B. & L. Association, 71 N. C. 444, and Lookout Lumber Company v. Mansion Hotel et al., 109 N. C. 658, 14 S. E. 35. The question has also been before this court in the case of Mott v. Wissler Mining Co., 135 Fed. 697, 68 C. C. A. 335, in which was in- volved the question as to when the lien for supplies under the Vir- ginia statute attached. In that case it is held that the lien for supplies attaches when the same are furnished, and not at the time the notice or claim for the lien is filed in the court. See, also, In re Dey, 9 Blatchf. 285, Fed. Cas. No. 3,871.

It being thus established that, if the appellee is entitled to a lien for any amount whatever the same may be, it has precedence over the lien of the mortgage executed to secure the payment of the bonds, we come now to consider the propositions specially relied upon by the appel- lant. These will be taken up severally, but, before proceeding to their discussion, we think it well to state that they are all of a legal charac- ter based upon facts admitted, or found by the master, for the ap- pellant in the concluding paragraph of the brief filed by counsel uses this language:

"If we were before this court complaining of findings of fact made by the master and confirmed by the court below, we fully recognize the justice of the rule that concedes the greatest weight to their conclusions, but, the facts not being in dispute and our propositions being legal conclusions from these facts, we submit that we were entitled from the hands of the master and the court below to a review of our propositions and a reason as to why they were unsound."

There are many assignments of error in the record, but following the argument, both oral and by brief in the case, the disputed ques- tions presented for our consideration we conceive to be as follows:

First. Whether the acceptance of certain notes by the contractor,

executed by Whitney & Stephenson, and indorsed by George I. Whitney and T. A. Gillespie, constitutes a payment pro tanto upon the appellee's claim.

Second. Whether the Whitney Company should be credited with an item of $100,000 included in a receipt given August 3, 1906, by Johnson, treasurer of the Gillespie Company, for the sum of $347,108.40, the said item having been based upon three Whitney & Stephenson notes aggregating that amount, given as above stated, and for which, when presented to the Bankers' Trust Company by George I. Whitney, he withdrew $100,000 of the trust fund.

Third. Whether certain work done and materials furnished in excavating for a foundation, and for the construction of the canal dam, claimed as extra work, over and above that contemplated by the original specifications under the contract, should be considered in estimating the 20 per cent. to be paid to the contractor.

Fourth. Whether certain expenditures made by the contractor, certain materials furnished, and work done in the course of the performance of the contract are such as are lienable under the North Carolina statute; and, if not lienable, can such expenditures, materials, and work be legally included as a part of appellee's claim for lien?

The contention of the appellant is that whatever amount was due to the Gillespie Company has been paid, and this proposition is based upon the notes given by Whitney & Stephenson, and afterwards indorsed by George I. Whitney and T. A. Gillespie, or by the Gillespie Company, and discounted. It will be seen by an examination of the facts that these notes were executed, went into the hands of the Gillespie Company, and were negotiated after the amounts they were intended to cover had become due to the said company for work done and materials furnished under the contract; in other words, the notes were not given nor accepted at the time the debt was contracted, but were delivered to the company thereafter. They were notes of Whitney & Stephenson, and not of the Whitney Company, the debtor. The master finds that there was no agreement at the time the notes were accepted that they were to be taken in payment of the debt. There was no testimony offered relative to the making and acceptance of the notes in question, aside from the transactions themselves, and the appellant relies solely upon the character of the transactions, and the circumstances attending them to support the position that they constituted payment. We think the doctrine in respect to such transactions is well settled. In Delafield v. Construction Co., 118 N. C. 71 (marginal page 105), 24 S. E. 10, it is held that:

"Where a note or acceptance is given on a precedent debt, the presumption is that it was not taken by the creditor in payment of the debt, and the onus is on the debtor to show the contrary; otherwise, when the note or acceptance is taken contemporaneously with the contracting of the debt."

In the opinion in the case Chief Justice Faircloth quotes from Noel v. Murray, 13 N. Y. 167, as follows:

"Where the note is received on a precedent debt the presumption is that it was not taken as a payment, and the onus is upon the debtor to show that it was taken as a payment; but where it is received contemporaneously with

the contracting of the debt the presumption is that it was taken in payment, and the burden of proving the contrary rests on the creditor."

It is true, as insisted by appellant, that, independent of an actual agreement, the conduct of parties may determine that a note of a third party has been taken as payment by a creditor. This proposition is in thorough accord with the opinion of Chief Justice Ruffin in the case of Gordon v. Price, 32 N. C. 385, cited in appellant's brief, wherein it is said:

"The note or bill of a third party taken by a creditor may, under the circumstances, be satisfaction absolutely; that is, when so intended."

But the opinion in this case goes further to say:

"But at the same time the current of authorities in case of a pre-existing debt is the other way, establishes that the discharge of such debt is not presumed from the creditor accepting a note or bill of another merely, but there must be an agreement to that effect, either express or to be inferred plainly from the circumstances and conduct of the parties."

The execution, indorsement, and negotiation of the Whitney & Stephenson notes were not accompanied by any unusual circumstances. The testimony, we think, fully bears out the conclusion that the giving of these notes, and their negotiation through the contractor was only a method, as before stated, adopted to raise money for the Whitney Company pending the sale of the bonds, and, in our view, the fact that the contractor was under the law of North Carolina entitled to a lien upon the property as security for the debt strengthens the position that the notes were not taken in payment because such action on the part of the contractor would waive the right to the lien, and the acceptance of unsecured promissory notes instead.

The contractor was entitled, when the work was done, or materials furnished under the contract, to have the cash from the Whitney Company in payment, and it would be applying a harsh rule to hold that, because the contractor consented to and aided in an arrangement which enabled the Whitney Company to procure funds to supply emergencies, such arrangement had the effect to discharge the debt, especially in view of the fact that $251,500 of the notes, which were the basis of the arrangement, were never paid by the makers nor by the Whitney Company.

Returning to the authorities upon the point we are discussing, it is laid down in 3 Randolph on Commercial Paper, § 1534, that:

"If the debtor gives the note of another person in settlement it will still be no payment unless it is so agreed."

"And by the general commercial law, as well of England as the United States, a bill of exchange drawn, or a promissory note made by the debtor does not discharge the preceding debt for which it is given, unless such be the agreement of the parties." 2 Daniel on Negotiable Instruments, p. 288.

And the same author goes on to say that it was said in the time of Lord Holt:

"A bill shall never go in discharge of a preceding debt, except it be a part of the contract that it shall be so."

This doctrine is sustained in Peter, Executor, v. Beverly et al., 35 U. S. 532, 9 L. Ed. 522, and in Lyman et al. v. Bank of United States, 53 U. S. 225, 13 L. Ed. 965.

In the course of the transactions, and on August 3, 1906, the T. A. Gillespie Company, by R. A. Johnson, its treasurer, signed a voucher in which it was acknowledged that the said company had received from Whitney & Stephenson on account of their contract with the Whitney Company the sum of $347,108.40. This voucher is composed of a number of items, and among others one of $100,000. The facts show that the basis of this $100,000 was notes of Whitney & Stephenson given and negotiated as set out heretofore aggregating that amount. This receipt was used by George I. Whitney to withdraw from the Bankers' Trust Company funds arising from the bonds to the amount thereof, which included the item of $100,000. It is insisted by the appellant that this last-mentioned amount should be credited upon the claim of the appellee.

The master in his first report found as a fact that the receipt, so far as the $100,000 item is concerned, was obtained from Robert A. Johnson, treasurer of the T. A. Gillespie Company, by a false representation made to him by George I. Whitney, president of the Whitney Company, to the effect that he had an arrangement with T. A. Gillespie by which the receipt was to be given for the notes as for cash, and included in the voucher referred to. Upon an exception by the appellant the master eliminated that finding of fact, and gave the testimony in regard thereto, which is as follows.

Robert A. Johnson testified:

"Mr. Whitney asked me to include these two payments of $50,000 each in the receipt of August 3d; that he had made a special arrangement with Mr. Gillespie; and I included these payments in the receipt."

T. A. Gillespie testified that:

"There was absolutely no agreement with Whitney, and, as far as that receipt is concerned, I never knew anything about it until Mr. Parmalee called my attention to it in the preparation of the Whitney matter. There never was any authority from me to make any receipt."

This testimony is nowhere contradicted, and indeed it is not denied by appellant that the basis of the $100,000 included in the receipt was notes of Whitney & Stephenson to that amount, indorsed by George I. Whitney and T. A. Gillespie, and upon which Whitney received the money. If the testimony of these two witnesses was to be believed, and, so far as we can see there is nothing to discredit it, the master's finding in the outset that Whitney obtained the receipt for the $100,000 as a cash payment by misrepresentation, and without the knowledge of the Gillespie Company was warranted, except in so far as the said company is affected in the transaction by the knowledge of its treasurer.

If there was nothing further involved, following the line heretofore pursued in regard to the Whitney & Stephenson notes, we would readily determine that the Whitney Company was not entitled to a credit for the $100,000 as a cash payment. It appears, however, that a $100,000 of the bonds of the Whitney Company representative of this.

$100,000 are outstanding, and inquiry naturally suggests itself as to how far this fact may affect the rights and interests of the other bondholders, for it must be admitted that the withdrawal of this amount from the hands of the trustee diminished the fund arising from the bonds to that extent. If, therefore, the $100,000 of bonds were in the hands of an innocent purchaser for value without notice, the question presented would be an important, if not a serious, one; but such is not the case, for, as appears from the record, there is a $100,000 of the bonds belonging to George I. Whitney, or at least, which he had in his possession, now in the hands of the T. A. Gillespie Company, having been placed there by the said Whitney as collateral security for the Whitney & Stephenson notes given and negotiated as has been hereinbefore set forth.

In this situation, the appellant and the bona fide bondholders appear to be amply protected against loss on account of these bonds. On the hearing Gillespie placed the bonds in his hands at the disposal of the court, and, in case the lien for the claim against the Whitney Company was established, admitted the jurisdiction of the court to make such decree respecting them as it deemed proper. The property of the Whitney Company is full security for the lien claimed by the appellee, and, these bonds being held only as collateral, the interest of the Gillespie Company in them ceases when the security upon which it relies for the payment of its claim is established. However, the question of the disposition of these bonds is not now before us, but we feel warranted in saying that at the proper time it will be within the province of the Circuit Court, sitting in equity, to pass upon the right of George I. Whitney under the circumstances to participate with the other bondholders in the distribution of the proceeds belonging to the mortgage fund, and to enter such decree as the merits of the case may require. That, however, is a matter confined to the bondholders in which the appellee has no particular interest, our determination going only to the extent that the $100,000 receipted for on August 3, 1906, should not be admitted as a credit upon the appellee's claim.

In the account of the appellee for the 20 per cent. commission, under the provisions of the contract, is included the sum of $115,128. This item is founded on an alleged increase in the proportions of the work, and the actual cost thereof, over and above the $1,500,000, which was at first estimated as the maximum. The appellant contests this claim on the ground that it exceeds the limit of the 20 per cent. commissions allowable under the terms of the contract. The master finds as a fact that the actual cost of originally estimated quantities of work on the dam and canal, plus the cost of foundations and masonry added to the dam, was $2,075,640. The result of this finding is that there was expended in the course of the work the sum of $575,640 beyond what was contemplated at the time of the making of the contract. It is on the latter sum that the additional commission is based. As we gather from the record the surveys preparatory to the work on the canal, dam, structures, etc., were made in July, 1902, and upon these surveys, the specifications, which are made a part of the contract, were drafted, and estimates as to the cost of the work formulated. The max-

imum compensation to the contractor founded on a cost of $1,500,000 was evidently based upon these specifications. No doubt at the time $1,500,000 was believed to be sufficient, to cover the cost of the work. Kennedy, the engineer of the Whitney Company, testifies that:

"The amount of the original work as contemplated by the contract was within $1,500,000 by $20,000 to $30,000."

T. A. Gillespie testified also:

"That the cost of the original work contemplated under the contract, without percentage, was about $1,500,000."

And the stipulation offered by the counsel for the respondents (one of whom was the present appellant), as agreed to by all parties, states that the cost of the work set forth in the estimate of July 17, 1902, was $1,468,505. The conditions which then presented themselves to the contracting parties no doubt led to the insertion of the following provision in the contract, which will be found also in the statement preceding this opinion:

"The contractor agrees that if the sum of the cost of the work to the contractor, and royalty and rental, on which the contractor is entitled to receive twenty (20%) per cent., shall amount to more than $1,500,000, the contractor's compensation shall include twenty (20%) per cent. on only $1,500,000."

It is clear to our minds, however, that, when the contracting parties made this provision, they intended at the time to provide for the contingency, if such arose, in which there might be a necessary enlargement in the proportions of the work, and a consequent increase in the use of materials, and the expenditure of money required to carry out the project, for in the contract we find another provision which, although set out in the statement, we reproduce here in order to emphasize to some extent the course of reasoning we are pursuing on this subject:

"The contractor agrees that the company shall have the right to make any changes that may appear to the company to be desirable in the location, form, or length of said canal, masonry, structures, and auxiliaries, and to make additions or deductions from the quantities of labor and materials specified, or shown on the drawings, before or after the commencement of construction without violating this agreement, and the company agrees that if the cost of the work should be increased by changes or additions, in that event, the hereinafter specified maximum sum on which the contractor is entitled to receive twenty (20) per cent. shall be increased to the extent of such increase in cost."

The contract further provides that the company's engineer should act as arbitrator in the settlement of every question, doubt, or dispute relating to the construction and completion of said canal, dam, bulkhead, spillways, and other structures, and the work of quarrying and preparing granite, and that his determinations and decisions should be final and binding on both parties.

The master finds as a fact that the work was supervised by J. J. Kennedy, engineer of the Whitney Company, and that subsequent to the signing of the contract changes were made in the plans and scope of the work by which the size of the canal was increased, the founda-

tion of the dam increased, and there was a change in the auxiliaries of the dam, in fact, says the master:

"The whole character of the project was changed by reason of the size having been increased."

And further says the master:

"The change was ordered by the president of the Whitney Company. * * * The scope of the work was increased by direction of the president of the Whitney Company."

In view of these findings, there is no escape from the conclusion that there was an increase in the work contemplated in the outset, and that this increase was at the instance of the authorities of the Whitney Company, and, in this connection, it must be borne in mind that the appellant makes no point as to the findings of fact by the master.

Further than this, the requirement of the contract was that the engineer of the Whitney Company should, on the fifth day of each month, prepare a correct statement showing the amount of money earned by the contractor during the preceding month under the terms of the agreement, and the Whitney Company agreed to pay the contractor on or before the 10th day of each month the total amount of money earned during the preceding month as correctly shown by such statements. It is shown that the engineer complied substantially with this provision, and in the course of operations the additional work upon the structure, together with the increase of cost, were included in the required statements, and these were accepted and acted upon by the Whitney Company, without objection, and if there should be no express authority in the contract for the additional work claimed, and the commissions upon the increase, the action of the Whitney Company was, in our opinion, an approval and ratification of what was done. The record does not disclose that the Whitney Company, the debtor, has at any time questioned the validity of this claim for commissions, or denied the obligation to pay it; and the receivers of the property of the company, although objecting to it in their answer, and before the Circuit Court, yet, when the decree of the court was entered sustaining the contractor's right to this item, they acquiesced and did not appeal.

We now come to consider the proposition that there were certain expenditures of money, materials used, and work done in the course of the operations for which the North Carolina statute does not provide a lien in favor of the contractor upon the property of the Whitney Company. It is admitted that there was a considerable outlay during the progress of the work, which, if standing alone, would not be a lienable charge, and, if these items were presented separately, we would not hesitate to adopt the position of the appellant with respect thereto, but, as we understand the situation, these objectionable features have ceased to be elements in the case. In the first place, the accounts of the contractor were from time to time presented as an entirety, were approved and certified by the engineer under the terms of the contract, and accepted by the Whitney Company. These accounts included, not only charges which are conceded to be lienable, but also

the charges we are now considering. Thereupon the Whitney Company made payments upon the whole without directing to what particular charge, or charges, the payments should be applied. Under these circumstances, we may well assume that as a part of the debt to the contractor was fortified by the right to a lien under the law, and a part of it entirely unsecured, that payments were first applied to that part which was the most precarious, for the law is such that, when payments are made upon several debts by a debtor without instructions as to the application, the creditor may apply such payments in his election, and the law goes further to say if the creditor, in the absence of directions as to the application, fails to apply a payment, that the law will appropriate the payment, to the most precarious debt.

If the contractor, when payments were received, exercised the privilege accorded him, then the amounts received from the Whitney Company from time to time were more than sufficient to discharge the nonlienable charges, or, if the rule of law stated is applied, the result is the same, and we may say further that the charges which constitute the basis of appellant's objection are contained in what is designated as Exhibit 11 in the testimony set out in the record, and as to this exhibit the testimony of Mr. Mitchell, an expert bookkeeper, and a witness, introduced by appellant, is to the effect that he had examined the books of the Whitney Company, and found that the items in that exhibit had all been paid, and Mr. Kennedy, the engineer of the Whitney Company, testified that he examined and approved, the charges in Exhibit 11, and that they were accepted as proper charges under the contract by the Whitney Company.

There are, therefore, three phases in which this subject may be viewed: First. That the entire account of the contractor, including both the lien and nonlienable charges; was examined and certified by the Whitney Company's engineer, and in this form was accepted by the said company. Second. That the nonlienable charges have been paid as testified by Mitchell, or have been discharged by the application of payments received and applied by the contractor, or the application of such payments as directed by the law. Third. That under the terms of the contract, and the facts in the case, the contractor was entitled, in any event, to as much as $300,000 under the 20 per cent. clause, and taking the aggregate of work done, and materials furnished, and the aggregate of payments made, the balance due the contractor is less than the sum which it is admitted is lienable under the North Carolina statute.

We have discussed the questions involved in the order in which they are stated in the outset, with the result that we conclude there is no error in the decree of the Circuit Court.

The report of the master shows that he thoroughly investigated the cause in hand in its every detail, and that all of the testimony offered pertaining to the matters in controversy was carefully taken and recorded. His findings of fact are, in our opinion, supported by the evidence, and his conclusions of law based thereon are such as would readily present themselves to an intelligent, capable lawyer. We feel

constrained to say that this exhaustive report of the master, which was confirmed by the learned judge below, has materially aided us in reaching the conclusion that the judgment and decree appealed from should be affirmed.

Affirmed.