## UNION CENT. LIFE INS. CO. v. MATTHEW.*

### COPPIN v. SAME.

Circuit Court of Appeals, Ninth Circuit.
April 15, 1929.

Nos. 5645, 5647.

F. Eldred Boland and Knight, Boland & Christin, all of San Francisco, Cal., for appellant Union Cent. Life Ins. Co.

Dinkelspiel & Dinkelspiel, of San Francisco, Cal., for appellant Coppin.

Thomas B. McCue, of San Francisco, Cal., and Clifton Hildebrand, of Oakland, Cal., for appellee.

Before RUDKIN and DIETRICH, Circuit Judges, and BEAN, District Judge.

RUDKIN, Circuit Judge. March 5, 1924, a policy of insurance in the sum of $75,000 on the life of Ralph L. Clements was issued by the Union Central Life Insurance Company, naming as beneficiary the Flintex Corporation, its successors and assigns, without the privilege of change of beneficiary. The

*For opinion denying rehearing, see 34 F.(2d) —.

policy was made effective as of January 13 of that year, and the first annual premium, amounting to $2,788.50, was paid in cash by the beneficiary. The second annual premium, which became due on January 13, 1925, was not paid, but, within the grace period allowed by the policy, the Flintex Corporation executed its promissory note for the amount of the premium, payable August 14 of that year. In July, 1925, the Flintex Corporation assigned to Clements its interest as beneficiary under the policy, so that from that date the estate of Clements became the beneficiary. This result was accomplished by the surrender of the old policy in which the Flintex Corporation was named as beneficiary and the issuance of a new policy identical in terms, aside from the fact that the new policy named as beneficiary the administrators, executors, or assigns of the insured. August 14, 1925, a partial payment was made by the Flintex Corporation on its premium note of the previous February and a new note was executed for the balance, amounting to the sum of $2,200. This renewal note has never been paid, nor has the third annual premium, which became due January 13, 1926. The insured died March 8, 1926. An action was thereafter commenced on the policy by the administrator of his estate, and George W. Coppin, trustee in bankruptcy of the Flintex Corporation, intervened in the action. In view of the conclusion we have reached on the merits, the grounds of intervention are not deemed material. Upon the trial, judgment was entered in favor of the administrator and against the insurance company for the amount of the policy, and the complaint in intervention was dismissed. The insurance company has appealed from the judgment against it, and the trustee in bankruptcy has likewise appealed from the judgment dismissing the complaint in intervention.

The policy provided, among other things, that all premiums should be payable in advance, either at the home office or to an authorized agent of the company on delivery of a receipt signed by the president or secretary and countersigned by such agent; that failure to pay any part of the annual premiums for the first two years, or any installment thereof, should avoid and nullify the contract; that after the annual premiums for two full years had been paid, on failure to pay any subsequent premium, the policy should lapse, and its value, if any, should be applied as set forth in another provision of the policy; that the note of the insured or the beneficiary, or their assigns, should be accepted in payment of the premium for the

second or subsequent years, or part thereof, if the surrender value of the policy should equal or exceed such note and any other indebtedness on the policy, and that any note accepted in payment of a premium should be a first lien on the policy and a set-off in the calculation of policy values; that a grace of 31 days should be granted for the payment of any premium after the first, and that, in the event of the death of the insured during the days of grace, the insurance should be deemed to be in force, and any unpaid premium for the current policy year should be deducted from the sum payable. Under another provision of the policy, if the policy owner failed to direct the application of the surrender value of the policy, such value should be applied automatically to extended insurance.

If the first two annual premiums had been paid in full in this case, the cash surrender value of the policy, amounting to $1,800, would extend the policy for a period of 179 days, thus carrying it beyond the date of the death of the insured. If, on the other hand, the premium note of $2,200, executed by the Flintex Corporation was an offset against the surrender value, there was nothing left, and the policy lapsed upon the expiration of 31 days from the date when the third annual premium became due. In that event, the policy was null and void at the date of the death of the insured. Under the uncontroverted facts, we think the latter conclusion follows as a matter of law. At the time of the change of beneficiaries, the second annual premium on the policy had been paid by the promissory note of the original beneficiary, if paid at all; and, inasmuch as the face of the note exceeded the surrender value of the policy, we presume it will be conceded that the policy at that time had no surrender value. And if this be true, did not the policy pass to the new beneficiary in the same plight? In other words, if the policy had no surrender value prior to the change, the change of itself would confer no such value. Nothing transpired after that time to give the policy a surrender value, except the small cash payment made by the Flintex Corporation on the premium note and the renewal of the note for the balance due. The cash payment was insufficient to give the policy a surrender value, and the mere renewal of the note for the pre-existing indebtedness had no such effect. Thus, in Bankers' Trust Co. v. T. A. Gillespie Co. (C. C. A.) 181 F. 448, the court said:

"There was no testimony offered relative to the making and acceptance of the notes in question, aside from the transactions themselves, and the appellant relies solely upon the character of the transactions, and the circumstances attending them to support the position that they constituted payment. We think the doctrine in respect to such transactions is well settled. In Delafield v. Construction Co., 118 N. C. [105] 71, 24 S. E. 10, it is held that: 'Where a note or acceptance is given on a precedent debt, the presumption is that it was not taken by the creditor in payment of the debt, and the onus is on the debtor to show the contrary; otherwise, when the note or acceptance is taken contemporaneously with the contracting of the debt.' In the opinion in the case Chief Justice Faircloth quotes from Noel v. Murray, 13 N. Y. 167, as follows: 'Where the note is received on a precedent debt the presumption is that it was not taken as a payment, and the onus is upon the debtor to show that it was taken as a payment; but where it is received contemporaneously with the contracting of the debt the presumption is that it was taken in payment, and the burden of proving the contrary rests on the creditor.' It is true, as insisted by appellant, that, independent of an actual agreement, the conduct of parties may determine that a note of a third party has been taken as payment by a creditor. This proposition is in thorough accord with the opinion of Chief Justice Ruffin in the case of Gordon v. Price, 32 N. C. 385, cited in appellant's brief, wherein it is said: 'The note or bill of a third party taken by a creditor may, under the circumstances, be satisfaction absolutely; that is, when so intended.' But the opinion in this case goes further to say: 'But at the same time the current of authorities in case of a pre-existing debt is the other way, establishes that the discharge of such debt is not presumed from the creditor accepting a note or bill of another merely, but there must be an agreement to that effect, either express or to be inferred plainly from the circumstances and conduct of the parties.' * * *

"'If the debtor gives the note of another person in settlement it will still be no payment unless it is so agreed.' 'And by the general commercial law, as well of England as the United States, a bill of exchange drawn, or a promissory note made by the debtor does not discharge the preceding debt for which it is given, unless such be the agreement of the parties.' 2 Daniel on Negotiable Instruments, p. 288.

"And the same author goes on to say that it was said in the time of Lord Holt: 'A bill

shall never go in discharge of a preceding debt, except it be a part of the contract that it shall be so.'

"This doctrine is sustained in Peter, Executor, v. Beverly et al. [10 Pet.] (35 U. S.) 532, 9 L. Ed. 522, and in Lyman et al. v. Bank of United States [12 How.] (53 U. S.) 225, 13 L. Ed. 965."

Again, in Union Electric Steel Co. v. Imperial Bank (C. C. A.) 286 F. 857–861, the court said:

"The general rule in this country and England is that the taking of a note either of a debtor or a third person for a pre-existing debt is not payment, unless there is an agreement, express or implied, to take the note as such, or unless the creditor parts with the note, or is guilty of laches, in not presenting it for payment in due time. Atlas S. S. Co., Ltd., v. Colombian Land Co., 42 C. C. A. 398, 102 F. 358; United States 'v. Sunday Creek Co. (D. C.) 194 F. 252; Maxwell v. Holmesville Mill & Power Co., 135 C. C. A. 570, 231 F. 684; United States Bank v. Daniel et al. [12 Pet.] (37 U. S.) 32, 56, 9 L. Ed. 989; Lyman et al. v. Bank of the United States [12 How.] (53 U. S.) 225, 243, 13 L. Ed. 965. 'Nothing is better established than that, in the absence of any special agreement to the contrary, the mere acceptance, by a creditor from his debtor, of the note or check of a third person, to the creditor's order, for a pre-existing indebtedness, is not absolute but merely conditional payment, defeasible on the dishonor or non-payment of the note or check, and, in that event, the debtor remains liable for his original debt,' and the burden of proving such special agreement is on the debtor. Holmes & Sons v. Briggs & Drum, 131 Pa. 233, 240, 18 Atl. 928, 929, 17 Am. St. Rep. 804.

"The note of a third party, given in payment of a pre-existing debt, is collateral security, or at most conditional payment only. Philadelphia v. Stewart, 195 Pa. 309, 314, 45 Atl. 1056. 'To make a note payment absolute, there must be an absolute agreement by the creditor to receive it as such,' and the burden of proving this is upon the debtor. Philadelphia et al. v. Neill & Lincoln Savings & Trust Co., 211 Pa. 353, 363, 60 Atl. 1033, 1035. The parties may expressly agree that the giving of a note may extinguish a pre-existing debt, but, in the absence of agreement, there is no presumption that the note is accepted as payment, and the evidence of express agreement must be clear to establish that fact. In re Wegman Piano Co. (D. C.) 221 F. 128."

And in Maxwell v. Holmesville Mill & Power Co. (C. C. A.) 231 F. 684–686, the court said:

"Counsel insist upon argument that the acceptance of a negotiable note of a third party on account of a debtor's liability raises the presumption of a payment of that liability, and they call attention to the fact that there is no evidence in this case whether these promissory notes were accepted in payment of the indebtedness of the Electric Service Company or merely as evidence of security for the indebtedness. But an examination of the decisions has satisfied that the weight of authority is that the taking by a creditor of the negotiable note of a third party for an antecedent debt does not extinguish the debt unless there is an express or an implied agreement that the negotiable note is received as payment. Peter v. Beverly [10 Pet.] (35 U. S.) 532, 567, 9 L. Ed. 522; Randolph on Commercial Paper, § 1534; Bankers' Trust Co. v. T. A. Gillespie Co., 104 C. C. A. 196, 181 F. 448, 456, 457."

The change in beneficiaries was made solely for the accommodation of the old beneficiary and the new. The insurance company itself had no interest in that change, and derived no benefit therefrom. It held a first lien on the policy for the amount due on the outstanding premium note, coupled with a right to offset the amount of that note against the surrender value; and we find nothing in the record to justify or support a finding that the company waived its right by merely accepting a renewal note from a corporation which is said to have been wholly insolvent. If any presumption is to be indulged under the circumstances, the natural presumption would be against the claim of waiver. The question is not whether the policy was forfeited for failure to pay the premium for the second year, but whether the policy had a surrender value so long as that premium remained unpaid. If it did not, there was nothing to extend the policy beyond two years and 31 days, and the insured having died after the lapse of that time, no right of action existed on the policy in favor of any person or persons. For this reason, the court erred in refusing to direct a verdict for the appellant insurance company. For the same reason, the judgment dismissing the complaint in intervention is free from error.

The judgment on the verdict in case No. 5645 is reversed, and the judgment dismissing the complaint in intervention, in case No. 5647, is affirmed.